No. 25-1921C
Judge Kaplan

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

LOGAN IRELAND, et. al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S PARTIAL MOTION TO DISMISS

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. MCCARTHY
Director

DOUGLAS K. MICKLE
Acting Deputy Director

OF COUNSEL:

MICHELLE M. LAURENCE, Major, USAF
Chief
Military Personnel Law and Litigation Branch
The Judge Advocate General's Corps
1500 West Perimeter Rd., Suite 1370
Joint Base Andrews-Naval Air Facility, MD 20762

WILLIAM P. RAYEL
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
United States Department of Justice
PO Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 616-0302
Fax: (202) 307-0972
E-mail: William.Rayel@usdoj.gov

Dated: March 16, 2026

Attorneys for Defendant

## TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................................... i

TABLE OF AUTHORITIES..................................................................................................... ii

STATEMENT OF THE ISSUE..................................................................................................3

STATEMENT OF THE CASE...................................................................................................4

ARGUMENT.............................................................................................................................7

I.      Standard Of Review For A RCFC 12(b)(1) Motion To Dismiss...................................7

II.     The Court Should Dismiss 16 Plaintiffs For Lack Of Jurisdiction Because Their
        Complaint Does Not Seek Presently Due Monetary Damages, But Instead Seeks
        A Declaration And Injunctive Relief Regarding Future Retirement Pay.......................8

        A.  Fourteen Plaintiffs Remain On Active Duty And, Thus, Are Presently
            Ineligible For The Retirement Pay That They Seek................................................10

        B.  MSgt Hart and TSgt Soukup Must Also Be Dismissed Because They Were
            On Active Duty At The Time The Complaint Was Filed, And Jurisdiction
            Is Determined At The Time The Complaint Was Filed...........................................13

CONCLUSION.......................................................................................................................14

## Index to Appendix

Memorandum from Secretary of Defense, Prioritizing Military Excellence and Readiness,
        dated February 7, 2025 ..............................................................................................App. 1

Memorandum from the Office of the Under Secretary of Defense for Personnel and Readiness,
        Additional Guidance on Prioritizing Military Excellence and Readiness,
        dated February 26, 2025 ............................................................................................App. 2

Memorandum from Under Secretary of War for Personnel and Readiness,
        Prioritizing Military Excellence and Readiness:  Additional Implementation
        Guidance on Administrative Separations, dated October 8, 2025 ...........................App. 15

Declaration of Colonel Eric D. Mowles (with exhibits), dated February 27, 2026 .............App. 22

Declaration of Lieutenant Colonel April L. Woody, dated March 6, 2026 .........................App. 55

Declaration of Lieutenant Colonel William J. Pringle, dated March 13, 2026 ...................App. 56

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Alder Terrace, Inc. v. United States*,
   161 F.3d 1372 (Fed. Cir. 1998) ......................................................................................... 7

*Black v. Sec'y of Health and Human Servs.*,
   93 F.3d 781 (Fed. Cir. 1996) .......................................................................................... 14

*Cedillo v. United States*,
   124 F.3d 1266 (Fed. Cir. 1997) ..................................................................................... 12

*GAF Building Materials Corp. v. Elk Corp. of Dallas*,
   90 F.3d 479 (Fed. Cir. 1996) .......................................................................................... 13

*Holley v. United States*,
   124 F.3d 1462 (Fed. Cir. 1997) ....................................................................................... 7

*Indium Corp. of America v. Semi-Alloys, Inc.*,
   781 F.2d 879 (Fed. Cir. 1985) ......................................................................................... 7

*Jankovic v. United States*,
   204 Ct. Cl. 807 (1974) ............................................................................................... 8, 11

*Lyon v. United States*,
   161 Fed. Cl. 88 (2022) .................................................................................................... 12

*Nat'l Air Traffic Controllers Ass'n v. United States*,
   160 F.3d 714 (Fed. Cir. 1998) .......................................................................................... 8

*Prentiss v. United States*,
   115 Ct. Cl. 78 (1949) ................................................................................................. 8, 11

*Shilling v. United States*,
   773 F. Supp. 3d 1069 (W.D. Wash. 2025) , *on appeal*, No. 25-2039 (9th Cir.) ......................... 5

*Shuping, by and through Sullivan v. United States*,
   No. 22-441, 2022 WL 9949955 (Fed. Cl. Oct. 17, 2022) .......................................... 8

*Talbott v. United States*,
   775 F. Supp. 3d 283 (D.D.C. 2025) , *on appeal*, No. 25-5087 (D.C. Cir.) ................................ 5

*Talbott v. United States*,
   No. 25-5087, 2025 WL 3533344 (D.C. Cir. Dec. 9, 2025) .......................................... 5

*United States v. King*,
  395 U.S. 1 (1969) .................................................................................................... 8

*United States v. Shilling*,
  145 S. Ct. 2695 (2025)............................................................................................ 5

*Vietnam Finewood Co. Ltd. v. United States*,
  466 F. Supp. 3d 1273 (CIT 2020)......................................................................... 14

*Wood v. United States,* 214 Ct. Cl. 744 (1977).......................................................... 9


**Statutes**

10 U.S.C. § 1201.................................................................................................... 3, 13

10 U.S.C. § 1401(a)(1)............................................................................................. 13

10 U.S.C. § 1405........................................................................................................ 11

10 U.S.C. § 1407(c)(1)............................................................................................... 10

10 U.S.C. § 1409............................................................................................. 10, 11, 13

10 U.S.C. § 8911......................................................................................................... 12

10 U.S.C. § 8914......................................................................................................... 12

10 U.S.C. § 9311......................................................................................................... 12

10 U.S.C. § 9314.................................................................................................... 12, 13

28 U.S.C. § 1491(a)(1)......................................................................................... 2, 3, 8

38 U.S.C. 5304(c) ...................................................................................................... 10

National Defense Authorization Act for Fiscal Year 1993,
  Pub. L. 102-484, § 4403(e), 106 Stat. 2315, 2703 (1992)................................. 10, 12

National Defense Authorization Act for Fiscal Year 2026,
  Pub. L. 119-60, § 603, 139 Stat. 718, 905-06 (2025)............................................. 11

**Rules**

RCFC 12(b)(1) ........................................................................................................... 1, 7

RCFC 15(d) ................................................................................................................. 14


**Other Authorities**

Executive Order 14,183, 90 Fed. Reg. 8,757 (Jan. 27, 2025) ........................................... 4

Department of Defense Instruction 1332.46 ............................................................... 5, 11

Secretary of Defense, Prioritizing Military Excellence and Readiness (Feb. 7, 2025) ................... 4

Office of Under Secretary of Defense for Personnel and Readiness (OUSD (P&R)),
    Additional Guidance on Prioritizing Military
    Excellence and Readiness (Feb. 26, 2025) ........................................................ *passim*

Under Secretary of War for Personnel and Readiness, Prioritizing Military Excellence and
    Readiness:  Additional Implementation Guidance on
    Administrative Separations (Oct. 8, 2025) ........................................................... 6, 12

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| LOGAN IRELAND, et. al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 25-1921C |
| | ) | (Judge Kaplan) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S PARTIAL MOTION TO DISMISS**

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims

(RCFC), defendant, the United States, respectfully requests that the Court dismiss the claims of

16 of the 17 plaintiffs in this case for lack of jurisdiction, *i.e.*, all plaintiffs except for Technical

Sergeant (TSgt) Sterrett. Plaintiffs are current or former members of the United States Air Force

or Space Force with gender dysphoria or a history of gender dysphoria who requested to be

retired with at least 15 years but less than 18 years of active service credit.[1] Plaintiffs were

initially issued retirement orders with retirement dates several months in advance. Upon further

review, however, the Air Force determined that plaintiffs did not meet the eligibility

requirements under Department of War (DoW) policy for retirement under Temporary Early

Retirement Authority (TERA), in the absence of an exception to the DoW policy being

---

[1] Gender dysphoria is a "marked incongruence between one's experienced or expressed gender and assigned gender of at least 6 months' duration, as manifested by conditions specified in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders: Fifth Edition, page 452, which is associated with clinically significant distress or impairment in social, occupational, or other important areas of functioning." Office of Under Secretary of Defense for Personnel and Readiness (OUSD (P&R)), Additional Guidance on Prioritizing Military Excellence and Readiness, Att. ¶ G.2 (Feb. 26, 2025) (Selnick Memo) (App. 13). "App. __" refers to the appendix attached to this motion.

approved.  Therefore, those orders were rescinded before plaintiffs were released from active duty.

Although plaintiffs allege that they are entitled to retirement pay because their retirement orders were allegedly illegally rescinded, 16 of the plaintiffs do not seek *presently due* monetary damages, as required for this Court to have jurisdiction to entertain a complaint under 28 U.S.C. § 1491(a)(1), because these plaintiffs were not released from active duty before the complaint was filed.  These plaintiffs remained on active duty at the time the complaint was filed, which meant that they were receiving basic pay for active service, and, thus, were statutorily ineligible for the *lower* retirement pay to which they claim that they are entitled.  Indeed, 14 of the plaintiffs are *still* serving on active duty.  These plaintiffs are essentially seeking a declaration that they are entitled to retirement pay at some *future* time when they separate from active duty and injunctive relief to effect those future payments.  This Court, however, does not have jurisdiction to grant such declaratory and injunctive relief.

Because jurisdiction is determined at the time the complaint is filed, the claims of the two additional plaintiffs, Master Sergeant (MSgt) Hart and TSgt Soukup, must also be dismissed from this case, based on the present complaint, even though they were released from active duty after the complaint was filed.  Like the plaintiffs that remain on active duty today, the complaint filed by MSgt Hart and TSgt Soukup essentially seeks a declaration that they are entitled to retirement pay at some future time and injunctive relief to effect those future payments.

Moreover, the 14 plaintiffs that remain on active duty may never have a claim for presently due monetary damages because they may ultimately be retired at the conclusion of their active duty with *higher retirement pay* than they would have received if their retirement orders had not been rescinded.  For example, if plaintiffs become disabled while on active duty,

then they may be entitled to a disability retirement under 10 U.S.C. § 1201. Indeed, one plaintiff is currently being processed through the Air Force's Disability Evaluation System, which could ultimately result in a disability retirement. Alternatively, plaintiffs may serve on active duty long enough to be eligible for a longevity retirement in accordance with current DoW policy. Under current DoW policy, service members with gender dysphoria (or a history of gender dysphoria) and more than 18 years of active service are eligible for early retirement under TERA. A retirement with 18 years of active service for any particular plaintiff would presumably result in higher retirement pay than the retirement that the plaintiff previously sought. One plaintiff has already reached 18 years of active service, and several others could reach 18 years of active service this year. Additionally, one plaintiff has sought a waiver to be retained on active duty notwithstanding his history of gender dysphoria, which the Secretary of the Air Force has not yet acted on.

In any event, even putting aside the various scenarios in which the rescission of some plaintiffs' retirement orders could ultimately result in them receiving *more* military pay, 16 of the 17 plaintiffs have essentially sought a declaration and injunctive relief regarding future monetary damages in their complaint, rather than the presently due monetary damages necessary for this Court's jurisdiction under 28 U.S.C. § 1491(a)(1). Accordingly, they should be dismissed from this lawsuit.

## STATEMENT OF THE ISSUE

Whether the Court lacks jurisdiction to entertain 16 plaintiffs' claims that their retirement orders were illegally rescinded, because these plaintiffs do not seek presently due monetary damages, where they either continue to receive active duty pay (14 plaintiffs) or separated from active duty after the complaint was filed (two plaintiffs).

## STATEMENT OF THE CASE[2]

On January 27, 2025, President Trump issued Executive Order 14,183, Prioritizing Military Excellence and Readiness, 90 Fed. Reg. 8,757 (Jan. 27, 2025).  The President determined that "the medical, surgical, and mental health constraints on individuals with gender dysphoria" are inconsistent with "the policy of the United States Government to establish high standards for troop readiness, lethality, cohesion, honesty, humility, uniformity, and integrity." *Id.* at 8,757.  On February 7, 2025, the Secretary of Defense issued a memorandum authorizing the Under Secretary of Defense for Personnel and Readiness (USD (P&R)) to issue additional policy and implementation guidance regarding service by members of the military with a current diagnosis or history of gender dysphoria.  Secretary of Defense, Prioritizing Military Excellence and Readiness (Feb. 7, 2025) (App. 1).  On February 26, 2025, the Office of the USD (P&R) issued the guidance.  Selnick Memo (App. 2-14).

The OUSD (P&R) guidance provided that "[s]ervice members who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria are disqualified from military service[,]" but "may be considered for a waiver on a case-by-case basis," if "there is a compelling Government interest in retaining the Service member that directly supports warfighting capabilities" and the service member meets certain specified criteria.  Selnick Memo Att. ¶ 4.3(a), (c) (App. 9).  The guidance also provided that "[s]ervice members who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria and are not granted a waiver pursuant to section 4.3. of this attachment will be processed for

---

[2]  For purposes of this motion only, we accept as true the factual allegations set forth in the complaint.  We respectfully reserve the right to challenge the factual allegations in the complaint in further proceedings.

administrative separation," including an administrative separation board for enlisted members or a board of inquiry for officers, if desired. *Id.* at ¶ 4.4(a), (a)(6)-(7) (App. 9-10).

Rather than undergoing involuntary separation proceedings, service members with gender dysphoria or a history of gender dysphoria were permitted to separate voluntarily within a certain timeframe, with voluntary separation pay in an amount that was twice the rate of the involuntary separation pay for which the member would have been eligible. *Id.* at ¶ 4.4(a)(4) (App. 10). Additionally, the USD (P&R) guidance provided that such service members "with over 18 but less than 20 years of total active duty service are eligible for early retirement under the Temporary Early Retirement Authority in accordance with [Department of Defense Instruction (DoDI)] 1332.46." *Id.* at ¶ 4.4(a)(8) (App. 10).

Implementation of these policies was initially blocked by preliminary injunctions issued on March 18, 2025, by the United States District Court for the District of Columbia in *Talbott v. United States*, 775 F. Supp. 3d 283 (D.D.C. 2025), *on appeal*, No. 25-5087 (D.C. Cir.), and on March 27, 2025, in *Shilling v. United States*, 773 F. Supp. 3d 1069 (W.D. Wash. 2025), *on appeal*, No. 25-2039 (9th Cir.). But the preliminary injunction in *Talbott* was administratively stayed by the United States Court of Appeals for the District of Columbia Circuit on March 27, 2025, followed later by a stay pending appeal, *see Talbott v. United States*, No. 25-5087, 2025 WL 3533344 (D.C. Cir. Dec. 9, 2025), and the preliminary injunction in *Shilling* was stayed pending appeal by the United States Supreme Court on May 6, 2025, *United States v. Shilling*, 145 S. Ct. 2695 (2025).

On May 23, 2025, after the preliminary injunctions were stayed, the Acting Assistant Secretary of the Air Force for Manpower and Reserve Affairs, Gwendolyn DeFilippi, issued a memorandum entitled "Additional [Department of the Air Force] Implementing Policy on

5

Prioritizing Military Excellence and Readiness" (DeFilippi Memo).  ECF No. 1-2.  This Air Force guidance provided that "Service members may apply for voluntary retirement or, if eligible, Temporary Early Retirement Authority (TERA).  TERA is permitted in accordance with [the Selnick Memo] for Service members with over 18 but less than 20 years of service.  Service members with 15 – 18 years of service may request TERA as an exception to policy." *Id.* at 3. The Air Force guidance also provided that members "may concurrently apply for voluntary separation/retirement and a retention waiver[.]" *Id.*

After the DeFilippi memo was issued, plaintiffs individually requested that they be granted a TERA retirement with at least 15 and less than 18 years of service.  *See* ECF No. 1 at 8.  TSgt Bable also concurrently applied for a retention waiver.  *See* App. 56-59.[3]  In June 2025, each of the plaintiffs were issued retirement orders with retirement dates between September 1, 2025, and December 1, 2025.  ECF No. 1 at 8-11; ECF Nos. 1-4 – 1-20.

On August 4, 2025, however, the new Acting Assistant Secretary of the Air Force for Manpower and Reserve Affairs, Brian Scarlett, issued a memorandum stating that he was disapproving the TERA exception to policy requests for certain members with at least 15 years and less than 18 years of active service, including plaintiffs (Scarlett Memo).  *See* ECF No. 1 at 12-17; ECF No. 1-22 at 2.  Plaintiffs' retirement orders were then rescinded on August 7, 2025,

---

[3]  The Secretary of the Air Force has not yet approved or disapproved TSgt Bable's waiver request, *see id.* at 61, and DoW policy now provides that Secretaries of the military departments shall not make any retention waiver determinations until after the service member elects not to proceed with a separation board or the board's recommendations have been approved, changed, or disapproved.  Under Secretary of War for Personnel and Readiness (USW (P&R)), Prioritizing Military Excellence and Readiness: Additional Implementation Guidance on Administrative Separations, pp. 3-4 (Oct. 8, 2025) (App. 17-18).  Accordingly, it remains an open question whether TSgt Bable will be granted a retention waiver.

or September 9, 2025, before plaintiffs were released from active duty. *See* ECF No. 1 at 13-17; ECF No. 1-23 – 1-39; App. 22-24, 30, 39, 49, 54.

The Scarlett Memo also provided that, in lieu of TERA, members were eligible for voluntary separation, with voluntary separation pay at twice the amount of involuntary separation pay, and members who do not voluntarily separate will be processed for involuntary separation. ECF No. 1-22 at 2. MSgt Hart, TSgt Soukup, and TSgt Sterrett requested voluntary separation. App. 22-23, 26-28, 35-37, 44-47. TSgt Sterrett was honorably discharged on September 1, 2025. *Id.* at 51. MSgt Hart and TSgt Soukup were honorably discharged on November 30, 2025, *Id.* at 32, 41, after they filed their November 10, 2025 complaint in this case. ECF No. 1 at 19. The other 14 plaintiffs remain on active duty. *See* App. 23-24, 54.

## ARGUMENT

### I.     Standard Of Review For A RCFC 12(b)(1) Motion To Dismiss

The plaintiff bears the burden of establishing subject-matter jurisdiction. *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998). In addressing a RCFC 12(b)(1) motion, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997) (citations omitted). However, in deciding a motion to dismiss for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1), the Court may consider evidentiary matters outside the pleadings. *Indium Corp. of America v. Semi-Alloys, Inc.*, 781 F.2d 879, 884 (Fed. Cir. 1985).

**II.     The Court Should Dismiss 16 Plaintiffs For Lack Of Jurisdiction Because Their Complaint Does Not Seek Presently Due Monetary Damages, But Instead Seeks A Declaration And Injunctive Relief Regarding Future Retirement Pay**

Except for TSgt Sterrett, the claims of the other 16 plaintiffs must be dismissed for lack of jurisdiction because their complaint does not seek *presently due* monetary damages.

Under 28 U.S.C. 1491(a)(1), "a plaintiff seeking to invoke the court's jurisdiction must present a claim for 'actual, presently due money damages from the United States.'" *Nat'l Air Traffic Controllers Ass'n v. United States*, 160 F.3d 714, 716 (Fed. Cir. 1998) (*NACTA*) (quoting *United States v. King*, 395 U.S. 1, 3 (1969)); *see also Shuping, by and through Sullivan v. United States*, No. 22-441, 2022 WL 9949955, at *3 (Fed. Cl. Oct. 17, 2022) ("The Tucker Act only grants the Court jurisdiction over claims for monetary damages that are 'presently due.'") (citation omitted).  A claim does not meet this requirement simply because the Court's decision on that claim "will ultimately enable the plaintiff to receive money from the government." *NACTA*, 160 F.3d at 716.

Accordingly, a claim for money that could later become due, such as future retirement pay, is outside the court's jurisdiction.  *See, e.g.*, *Jankovic v. United States*, 204 Ct. Cl. 807, 807 (1974) ("At issue is this court's jurisdiction of a claim for civil service retirement credit where the plaintiff is still in active Government employ.  This Court does not have jurisdiction since plaintiff is not asking for money presently due him from the United States. . . . If the cause of action ever accrues, it will do so only when plaintiff is presently entitled to retirement benefits."); *Prentiss v. United States*, 115 Ct. Cl. 78, 81 (1949) ("The relief asked first by the plaintiff is, in effect, a declaration that, beginning on January 4, 1952, on which date he will be sixty-two years old, the Government should begin to pay him an annuity of $378.81 per annum.

8

We have no jurisdiction to make such a declaration. We can render a judgment only for money, and for money presently due. . . .  This request for relief is premature and cannot be granted.").

For example, in *Wood v. United States*, the plaintiff was removed from Federal employment at age 42 and sought monetary relief for the loss of retirement benefits that he allegedly would have received if he had been separated at age 50.  *See* 214 Ct. Cl. 744, 744-45 (1977) (unpublished).  The Court explained that because the "plaintiff is not yet 50, this court plainly has no jurisdiction at all to grant him any retirement benefits at this time."  *Id.* at 745. The Court further concluded that "[a]t best, plaintiff is claiming that he is not going to get at age 50 what is due him; such a claim is for future relief which we may not now entertain."  *Id.* This is because it "is well-settled that the court can only enter judgment for monies presently due and owing from the United States, and, lacking declaratory judgment jurisdiction, cannot adjudicate future rights and obligations."  *Id.*

Plaintiffs in this case request that the Court:  1) declare that the rescissions of their retirement orders were unlawful and invalid; 2) order that plaintiffs' "rescinded retirement orders be reinstated and that their military records be corrected accordingly, with the retirement effective dates and durations of service adjusted to account for any days that Plaintiffs continue to serve after the retirement effective dates specified in the rescinded orders"; and 3) award "money and other benefits in an amount to be determined at trial."  ECF No. 1 at 18-19. As demonstrated below, because 16 of the plaintiffs were still serving on active duty at the time the complaint was filed, and 14 of those plaintiffs are still serving on active duty, the complaint does not seek presently due monetary damages with regard to these 16 plaintiffs, but instead seeks declaratory and injunctive relief for purposes of obtaining future retirement pay.

9

**A.    Fourteen Plaintiffs Remain On Active Duty And, Thus, Are Presently Ineligible For The Retirement Pay That They Seek**

All plaintiffs except MSgt Hart, TSgt Soukup, and TSgt Sterrett remain on active duty. *See* App. 23-24, 54. At this time, the 14 plaintiffs who are still on active duty have no claim for presently due retirement pay because a service member may not collect both active duty pay and retirement pay for the same period. *See* 38 U.S.C. 5304(c) ("Pension, compensation, or retirement pay on account of any person's own service shall not be paid to such person for any period for which such person receives active service pay."). If these plaintiffs retirement orders had not been rescinded, and they were currently receiving retirement pay under TERA, their retirement pay would have been significantly less than the active duty pay that they are actually receiving, because their retirement pay would have been calculated based on a *percentage* multiplier of their retired pay base, *i.e.*, the average of their highest 36-months of basic pay (at most). *See* 10 U.S.C. §§ 1407(c)(1), 1409(b).[4] In other words, the plaintiffs who remain on active duty are currently receiving substantially more military pay per month than they would have been receiving if they had been retired under TERA.

Accordingly, the 14 plaintiffs who remain on active duty do not seek back retirement pay, but instead allege that, *after they are released from active duty*, they should begin receiving retirement pay. *See* ECF No. 1 at 18-19 (requesting that the Court order "that Plaintiffs' rescinded retirement orders be reinstated and that their military records be corrected accordingly, *with the retirement effective dates and durations of service adjusted to account for any days that*

---

[4] For example, if members of the regular Air Force or Space Force were retired under TERA with 18 years of creditable service, their monthly retirement pay would be no higher than 44.1 percent of their average highest 36-months of basic pay (2.5 percent (10 U.S.C. § 1409(b)(1)(A)) * 18 (10 U.S.C. § 1409(b)(1)(B)) * .98 (*see* National Defense Authorization Act for Fiscal Year 1993, Pub. L. 102-484, § 4403(e), 106 Stat. 2315, 2703 (1992)) = 44.1 percent).

*Plaintiffs continue to serve after the retirement effective dates specified in the rescinded orders*")
(emphasis added).  This is not a claim for presently due monetary damages, but is instead a request for declaratory and injunctive relief necessary to effect *future* retirement pay.  The Court has no jurisdiction to entertain such a claim.  *See, e.g.*, *Jankovic*, 204 Ct. Cl. at 807; *Prentiss*, 115 Ct. Cl. at 81.

Moreover, the plaintiffs who remain on active duty may *never* have a claim for presently due monetary damages, as they may ultimately be retired with higher retirement pay than what they would have received under their rescinded retirement orders.  For example, plaintiffs that are serving on active duty may ultimately serve on active duty long enough to be eligible for a retirement based on years of active service in accordance with current DoW policy.  Under current DoW policy, service members with gender dysphoria (or a history of gender dysphoria) and more than 18 years of active service are eligible for early retirement under TERA. *See* Selnick Memo, Att. ¶ 4.4(a)(8) (App. 10) ("Service members identified pursuant to section 3.4.e. of this attachment with over 18 but less than 20 years of total active duty service are eligible for early retirement under the Temporary Early Retirement Authority in accordance with DoDI 1332.46.").[5]  A retirement with more than 18 years of active service for any particular plaintiff would presumably result in higher retirement pay than the retirement that the plaintiff previously sought with less than 18 years of active service, because the plaintiff's additional active service would increase his or her retired pay percentage multiplier.  *See* 10 U.S.C. §§ 1405, 1409.

---

[5] Plaintiffs' complaint states that TERA was extended until December 31, 2025, but the National Defense Authorization Act for Fiscal Year 2026 subsequently extended TERA until December 31, 2030.  Pub. L. 119-60, § 603, 139 Stat. 718, 905-06 (2025).

One plaintiff, Lieutenant Colonel Davis, has already reached 18 years of active service. *See* ECF No. 1-5 at 2 (showing more than 17 years and 8 months of active service as of September 30, 2025).  And several other plaintiffs could reach 18 years of active service this year.  *See* ECF No. 1-10 at 2 (showing more than 17 years and 7 months of active service as of November 30, 2025 for TSgt Rogers); ECF No. 1-11 at 2 (showing more than 17 years and 3 months of active service as of November 30, 2025 for TSgt Elliott); ECF No. 1-12 at 2 (showing more than 17 years and 2 months of active service as of September 30, 2025 for TSgt Hunt); ECF No. 1-17 at 2 (showing more than 17 years and 5 months of active service as of September 30, 2025 for TSgt Walley); ECF No. 1-18 at 2 (showing more than 16 years and 10 months of active service as of October 31, 2025 for TSgt Barfield).[6]

Additionally, another plaintiff, TSgt Bable, has applied for a waiver to allow him to be retained in the Air Force notwithstanding his history of gender dysphoria.  *See* App. 56-59. The Secretary of the Air Force has not yet approved or disapproved TSgt Bable's request for a retention waiver, *see id.* at 61, and DoW policy now provides that Secretaries of the military departments shall not make any retention waiver determinations until after the service member elects not to proceed with a separation board or the board's recommendations have been approved, changed, or disapproved.  USW (P&R), Prioritizing Military Excellence and Readiness: Additional Implementation Guidance on Administrative Separations, pp. 3-4

---

[6] To be clear, we are not suggesting that any particular plaintiff is or will be *entitled* to a retirement under TERA with 18 years of active service.  Retirements under 10 U.S.C. §§ 9311 and 9314 (formerly 10 U.S.C. §§ 8911 and 8914), which includes retirements under TERA, *see* Pub. L. 102-484, § 4403(b)(3), 106 Stat. 2315, 2702, are *discretionary*.  *See Cedillo v. United States*, 124 F.3d 1266 (Fed. Cir. 1997); *cf. Lyon v. United States*, 161 Fed. Cl. 88, 94-96 (2022) (holding that an Army officer retirement statute that is "analogous" to 10 U.S.C. § 9311 is not money-mandating because it grants the Secretary of the Army "the unfettered discretion whether to retire, upon application, any commissioned Army officer who has the necessary years of service.").

(App. 17-18).  Accordingly, TSgt Bable may be granted a waiver and serve on active duty long enough to be eligible for a regular longevity retirement under 10 U.S.C. § 9314.

As another example, if plaintiffs become disabled while on active duty, then they may be entitled to disability retirements under 10 U.S.C. § 1201.  For a disability retirement, the retired pay base is calculated the same as a retirement under TERA, and the member can elect a multiplier calculated under 10 U.S.C. § 1409 (*i.e.*, based upon years of creditable service) or the member's disability rating percentage up to 75 percent.  10 U.S.C. § 1401(a)(1).  Indeed, one plaintiff, MSgt Ireland, is currently being processed through the Air Force's Disability Evaluation System, *see* App. 55, which could ultimately result in a disability retirement. *See* 10 U.S.C. § 1201.

In any event, regardless of whether plaintiffs who remain on active duty may someday have a claim for presently due retirement pay, they do not have one now.  Accordingly, their claims must be dismissed.

**B.      MSgt Hart and TSgt Soukup Must Also Be Dismissed Because They Were On Active Duty At The Time The Complaint Was Filed, And Jurisdiction Is Determined At The Time The Complaint Was Filed**

Although MSgt Hart and TSgt Soukup voluntarily separated from active duty after the complaint was filed, their claims must also be dismissed because "[t]he presence or absence of jurisdiction must be determined on the facts existing at the time the complaint under consideration was filed."  *GAF Building Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 483 (Fed. Cir. 1996) (citation omitted).

At the time the complaint was filed on November 10, 2025, ECF No. 1 at 19, MSgt Hart and TSgt Soukup were serving on active duty and did not separate from active duty until November 30, 2025.  App. 22-23, 30, 39.  Accordingly, like the plaintiffs who remain on active

13

duty today, MSgt Hart and TSgt Soukup were not seeking *presently due* monetary damages at the time the complaint was filed, but were instead essentially seeking a declaration that they were entitled to retirement pay at some *future* time when they are released from active duty and injunctive relief to effect those future payments. *See* Section II.A, above. Indeed, the rescinded retirement orders of MSgt Hart, as well as many other plaintiffs, did not even purport to relieve them of active duty until November 30, 2025, after the complaint was filed. *See* ECF No. 1-19 at 2 (MSgt Hart); *see also* ECF No. 1-4 at 2 (MSgt Ireland); ECF No. 1-6 at 2 (TSgt Anguiano); ECF No. 1-7 at 2 (Sgt Hedrich); ECF No. 1-10 at 2 (TSgt Rogers); ECF No. 1-11 at 2 (TSgt Elliott); ECF No. 1-13 at 2 (TSgt Copper); ECF No. 1-14 at 2 (TSgt Bable); ECF No. 1-15 at 2 (TSgt Rousch); ECF No. 1-16 at 2 (TSgt Brimhall); ECF No. 1-20 at 2 (TSgt Cassidy).

Accordingly, the claims of MSgt Hart and TSgt Soukup should also be dismissed.[7]

## CONCLUSION

For these reasons, we respectfully request the Court dismiss all plaintiffs except TSgt Sterrett.

---

[7] Arguably, MSgt Hart and TSgt Soukup could cure this jurisdictional defect by filing a supplemental complaint under RCFC 15(d), with leave of the Court, alleging that they have separated from active duty. *See Black v. Sec'y of Health and Human Servs.*, 93 F.3d 781, 789-92 (Fed. Cir. 1996); *but see Vietnam Finewood Co. Ltd. v. United States*, 466 F. Supp. 3d 1273, 1285-87 (CIT 2020). We raised this possibility with plaintiffs, but they decided to proceed with their complaint as is.

14

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. MCCARTHY
Director

DOUGLAS K. MICKLE
Acting Deputy Director

OF COUNSEL:                                                    s/ William P. Rayel
                                                               WILLIAM P. RAYEL
MICHELLE M. LAURENCE, Major, USAF                              Senior Trial Counsel
Chief                                                          Commercial Litigation Branch
Military Personnel Law and Litigation Branch                   Civil Division
The Judge Advocate General's Corps                             United States Department of Justice
1500 West Perimeter Rd., Suite 1370                            PO Box 480, Ben Franklin Station
Joint Base Andrews-Naval Air Facility, MD 20762               Washington, D.C. 20044
                                                               Tel: (202) 616-0302
                                                               Fax: (202) 307-0972
                                                               E-mail: William.Rayel@usdoj.gov

Dated: March 16, 2026                                          Attorneys for Defendant

15