**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

LOGAN IRELAND, ASHLEY DAVIS, ALYXANDRA ANGUIANO, AUBREIGH HEDRICH, AXEL STERRETT, BRANDI SOUKUP, CHRIS ROGERS, CLAIRE ELLIOTT, COREY HUNT, CORVUS COPPER, DEVIN BABLE, JACK ROUSCH, KIRA BRIMHALL, LINDELL WALLEY, MIKAYLA BARFIELD, NOELLE HART, RUPERT CASSIDY,

        Plaintiffs,

        v.

THE UNITED STATES OF AMERICA,

        Defendant.

No. 1:25-cv-01921-EDK
Judge Elaine D. Kaplan

<u>**PLAINTIFFS' RESPONSE TO DEFENDANT'S PARTIAL MOTION TO DISMISS**</u>

Jennifer Levi (*pro hac vice*)
Michael Haley (*pro hac vice*)
GLBTQ LEGAL ADVOCATES & DEFENDERS
18 Tremont Street, Suite 950
Boston, MA 02108
jlevi@gladlaw.org
mhaley@gladlaw.org
T: (617) 426-1350

Eli Segal (counsel of record)
STAPLETON SEGAL COCHRAN LLC
1760 Market Street, Suite 403
Philadelphia, PA 19103
esegal@stapletonsegal.com
T: (215) 402-6555

Shannon P. Minter (*pro hac vice pending*)
Christopher F. Stoll (*pro hac vice pending*)
NATIONAL CENTER FOR LGBTQ RIGHTS
1401 21st St. #11548
Sacramento, CA 95811
sminter@nclrights.org
T: (415) 392-6257

Jeremy S. Spiegel (of counsel)
LAW OFFICE OF JEREMY SPIEGEL
123 South Broad Street, Suite 1850
Philadelphia, PA 19109
spiegel@jeremyspiegellaw.com
T: (215) 609-3154

*Attorneys for Plaintiffs*

April 13, 2026

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................................1

II.   STATEMENT OF QUESTION PRESENTED ...................................................................2

III.  STATEMENT OF THE CASE .............................................................................................2

    A.   10 U.S.C. § 9329 entitles Air Force and Space Force members retired under 10 U.S.C. § 9311 or § 9314 to retirement pay.  ................................................................ 2

    B.   Congress authorized the Secretary of the Air Force to make retirement under § 9311 and § 9314 available to members with at least 15 years of service. ............................... 3

    C.   The Acting Assistant Secretary of the Air Force for Manpower and Reserve Affairs, with authority delegated by the Secretary of the Air Force, permitted transgender Air Force and Space Force members with at least 15 years of service to request retirement under § 9311 and § 9314.  ........................................................................................................ 3

    D.   The Air Force issued retirement orders to all Plaintiffs, approving their requests to retire under § 9311 or § 9314 with 15–18 years of service. . ............................................. 5

    E.   The Air Force impermissibly rescinded Plaintiffs' retirement orders.  .................................. 6

    F.   Plaintiffs sued for violation of 10 U.S.C. § 9329.  .................................................. 7

IV.   ARGUMENT  ........................................................................................................................8

    G.   Standard of review ..................................................................................................... 8

    H.   Defendant's motion should be denied because Plaintiffs seek to recover, as damages, the retired pay that they should have been receiving under 10 U.S.C. § 9329 beginning on the retirement effective dates in their unlawfully rescinded retirement orders. ............................ 9

V.    CONCLUSION.....................................................................................................................11

# TABLE OF CONTENTS

**Cases**

*Ancman v. United States*, 77 Fed. Cl. 368 (Fed. Cl. 2007) .............................................................. 9

*Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879 (Fed Cir. 1985) ...................................... 8

*Jankovic v. United States*, 204 Ct. Cl. 807 (Ct. Cl. 1974)............................................................... 9

*Nat'l Air Traffic Controllers Ass'n v. United States*, 160 F.3d 714 (Fed. Cir. 1998) .................. 8, 9

*Power Density Solutions LLC v. United States*, 159 Fed. Cl. 208, 211 (Fed. Cl. 2022)................11

*Prentiss v. United States*, 115 Ct. Cl. 78 (Ct. Cl. 1949) .................................................................. 9

*Wood v. United States*, 214 Ct. Cl. 744 (Ct. Cl. 1977)..................................................................... 9

*Yant v. United States*, 85 Fed. Cl. 264 (Ct. Cl. 2009).................................................................... 10

**Statutes**

10 U.S.C. § 9311 ............................................................................................................. 2, 3, 5, 6, 8

10 U.S.C. § 9314............................................................................................................. 2, 3, 5, 6, 8

10 U.S.C. § 9329.............................................................................................................. passim

**Other Authorities**

National Defense Authorization Act for Fiscal Year 1993, 102 P.L. 484, § 4403 (1992)............... 3

National Defense Authorization Act for Fiscal Year 2017, 114 P.L. 328, § 508 (2016)................. 3

National Defense Authorization Act for Fiscal Year 2026, 119 P.L. 60, § 603 (2025).................. 3

**Rules**

RCFC 12(b)(1) ...........................................................................................................2, 10, 11

## I.    INTRODUCTION

Plaintiffs are transgender current or former members of the United States Air Force or the United States Space Force.[1] Compl. ¶ 1. After the Secretary of Defense announced in May 2025 that transgender service members would be required to "separate" from the military imminently, Plaintiffs applied for "retirement," which brings with it far more substantial benefits than "separation." *Id.* ¶¶ 33–40, 49. In June 2025, the Air Force issued retirement orders to all 17 Plaintiffs, granting them retirement with 15–18 years of service "BY ORDER OF THE SECRETARY OF THE AIR FORCE." *Id.* ¶¶ 42–43 & Exs. 3–19. Each of those orders provided that the Plaintiff to whom it pertained would be "RETIRED EFFECTIVE" a date certain—either September 1, October 1, November 1, or December 1, 2025. *Id.* ¶ 42 & Exs. 3–19. Under 10 U.S.C. § 9329, upon reaching these prescribed retirement effective dates, Plaintiffs were to be "entitled to retired pay computed under chapter 945" of Title 10 of the U.S. Code.  *Id.* ¶¶ 23–24, 54, 57, 63.

In August and September 2025, however, before any of the Plaintiffs reached their respective retirement effective dates, the Air Force rescinded all 17 of these retirement orders. Compl. ¶¶ 46–51. Yet the Air Force's own retirement instruction— Department of the Air Force Instruction 36-3203—provides that retirement orders may only be rescinded under very limited circumstances, none of which were present here. *Id.* ¶¶ 44, 52, 60–61. Plaintiffs filed this lawsuit to recover the retired pay that they should be receiving under § 9329 and to reinstate their retirement orders, with credit for any time that they have continued to serve after the retirement effective dates in those orders. *Id.* ¶ 1 & pp. 18–19.

---

[1] The United States Air Force and the United States Space Force are both organized under the Department of the Air Force and fall under the leadership of the Secretary of the Air Force. Compl. ¶ 1.

1

The United States now moves under RCFC 12(b)(1) to dismiss the claims of 16 of the 17 Plaintiffs for lack of subject matter jurisdiction because, according to the United States, none of these Plaintiffs has presented a claim for presently due monetary damages. This is incorrect. As of the retirement effective dates in their unlawfully rescinded retirement orders—dates that all have passed—Plaintiffs were statutorily entitled to retired pay. And again, as damages in this lawsuit, Plaintiffs are seeking to recover the retired pay that they claim they should have been receiving ever since. The amount of those damages, and how any continued active duty pay may intersect with Plaintiffs' entitlement to them, are not jurisdictional but merits questions for another day. The motion should be denied, and all Plaintiffs should be permitted to proceed with their claims.

## II.     STATEMENT OF QUESTION PRESENTED

Whether the Court has subject matter jurisdiction where Plaintiffs seek to recover, as damages, the retired pay that they should have been receiving under 10 U.S.C. § 9329 beginning on the retirement effective dates in their unlawfully rescinded retirement orders?

## III.    STATEMENT OF THE CASE

**A.     10 U.S.C. § 9329 entitles Air Force and Space Force members retired under 10 U.S.C. § 9311 or § 9314 to retirement pay.**

Chapter 941 of Title 10 of the United States Code provides the statutory framework for the retirement of members of the Air Force and Space Force for length of service. Compl. ¶ 22. Within chapter 941:

- 10 U.S.C. § 9311, previously numbered § 8911, provides that "[t]he Secretary of the Air Force may, upon the officer's request, retire a regular or reserve commissioned officer of the Air Force or the Space Force who has at least 20 years of service computed under section 9326 of this title, at least 10 years of which have been active service as a commissioned officer";

- 10 U.S.C. § 9314, previously numbered § 8914, provides that "[u]nder regulations to be prescribed by the Secretary of the Air Force, an enlisted member of the Air

2

Force or the Space Force who has at least 20, but less than 30, years of service computed under section 9325 of this title may, upon his request, be retired"; and

- 10 U.S.C. § 9329, previously numbered § 8929, provides that "[a] member of the Air Force or the Space Force retired under this chapter is entitled to retired pay computed under chapter 945 of this title."

Compl. ¶ 23. Therefore, a member of the Air Force or Space Force who is "retired under" § 9311 or § 9314 is "entitled to retired pay." *Id.* ¶ 24.

**B.      Congress authorized the Secretary of the Air Force to make retirement under § 9311 and § 9314 available to members with at least 15 years of service.**

In Section 4403 of the National Defense Authorization Act for Fiscal Year 1993, titled Temporary Early Retirement Authority ("TERA"), Congress authorized the Secretaries of the Army, Navy, and Air Force to make retirement available to members with 15 to 20 years of service, with a deduction of 1% in retirement pay for each year short of 20 years of service. Compl. ¶ 25; *see* 102 P.L. 484, § 4403(b), (e). With respect to the Air Force in particular, Congress authorized the Secretary to make retirement under § 9311 and § 9314—then numbered § 8911 and § 8914— available to members with at least 15 years of service. Compl. ¶ 25; s*ee* 102 P.L. 484, § 4403(b)(3). Congress extended this TERA authorization until December 31, 2025, Compl. ¶ 27; s*ee* National Defense Authorization Act for Fiscal Year 2017, 114 P.L. 328, § 508, and it recently did so again until December 31, 2030, s*ee* National Defense Authorization Act for Fiscal Year 2026, 119 P.L. 60, § 603.

**C.      The Acting Assistant Secretary of the Air Force for Manpower and Reserve Affairs, with authority delegated by the Secretary of the Air Force, permitted transgender Air Force and Space Force members with at least 15 years of service to request retirement under § 9311 and § 9314.**

On January 27, 2025, President Donald Trump issued Executive Order 14183, "Prioritizing Military Excellence and Readiness," in which he directed the Secretary of Defense to take the steps necessary to exclude transgender people from the military. Compl. ¶ 29. One month later, on

3

February 26, 2025, Darin S. Selnick, Performing the Duties of the Under Secretary of Defense for Personnel and Readiness, issued a Memorandum directing the Secretaries of the Military Departments to take the steps necessary to exclude transgender people from their respective Departments (the "February 26 Memorandum"). *Id.* ¶ 30.

On March 27, 2025, in *Shilling v. United States*, the United States District Court for the Western District of Washington issued a nationwide preliminary injunction, temporarily blocking the implementation of the transgender military ban. *Id.* ¶ 31. But on May 6, 2025, the United States Supreme Court granted a stay of this preliminary injunction, thus allowing the ban to take effect. *Id.* ¶ 32. Just two days later, on May 8, 2025, the Secretary of Defense issued a Memorandum recognizing the Supreme Court ruling and setting June 6, 2025, and July 7, 2025, as the deadlines for transgender active-duty service members and reserve service members, respectively, to self-identify and voluntarily separate or else face involuntary separation. *Id.* ¶ 33.

On May 23, 2025, Acting Assistant Secretary of the Air Force for Manpower and Reserve Affairs Gwen R. DeFilippi issued a Memorandum, titled "Additional DAF Implementing Policy on Prioritizing Military Excellence and Readiness," providing "additional implementation guidance to address voluntary separations/retirements and involuntary identification actions" for transgender Air Force and Space Force members (the "May 23 Memorandum"). *Id.* ¶ 34 & Ex. 1. Acting Assistant Secretary DeFilippi issued the May 23 Memorandum pursuant to authority delegated to her by the Secretary of the Air Force. *Id.* ¶ 34; *see also, e.g.*, Headquarters Air Force Mission Directive (HAFMD) 1-24, § 3.2. A section of the May 23 Memorandum, titled "Voluntary Separations and Retirements," included the following paragraph regarding TERA for transgender Air Force and Space Force members:

> Service members may apply for voluntary retirement or, if eligible, Temporary Early Retirement Authority (TERA). TERA is permitted

> in accordance with reference (b) [i.e., the February 26 Memorandum] for Service members with over 18 but less than 20 years of service. *Service members with 15 – 18 years of service may request TERA as an exception to policy.* Service members with 15 – 18 years of service who have already submitted a voluntary separation may withdraw the separation application and apply for retirement.

*Id.* ¶ 36 & Ex. 1 (emphasis added). By providing that "Service members with 15 – 18 years of service may request TERA as an exception to policy," the May 23 Memorandum permitted transgender Air Force and Space Force members with 15–18 years of service to apply for retirement under § 9311 or § 9314, *id.* ¶ 37, which, if granted, would entitle them to retired pay under § 9329, *id.* ¶¶ 23–24.

The Air Force Personnel Center then issued updated "Instructions for Service Members with Gender Dysphoria to Request Voluntary Separation, Retirement or a Retention Waiver," which, consistent with the May 23 Memorandum, stated the following regarding TERA for transgender Air Force and Space Force members:

> Members with over 15 years but less than 20 years of active service may be eligible to apply for retirement under the Temporary Early Retirement Authority (TERA). While OSD guidance offered use of TERA for SMs with 18-20 years of service, *the DAF is extending TERA eligibility to include members who have more than 15 years of service and less than 18 years of service, as an exception to policy (ETP). If applying for TERA with between 15 and 18 years of service, the member will add a remark in the justification block saying they are requesting TERA as an ETP.*

*Id.* ¶ 38 & Ex. 2 (emphasis added).

**D.    The Air Force issued retirement orders to all Plaintiffs, approving their requests to retire under § 9311 or § 9314 with 15–18 years of service.**

As of the May 23 Memorandum, Plaintiffs were all transgender members of the Air Force or Space Force and thus subject to the ban on transgender military members that was in the process of being implemented. Compl. ¶¶ 1, 39. In addition, at that time, all Plaintiffs had accrued 15–18

5

years of service. *Id.* ¶¶ 4–20. Therefore, as authorized by the May 23 Memorandum, all 17 Plaintiffs requested retirement under § 9311 or § 9314 as an exception to policy. *Id.* ¶¶ 37, 40.

Between June 6 and June 30, 2025, the Air Force issued retirement orders to all Plaintiffs, granting their requests to retire with 15–18 years of service. *Id.* ¶¶ 41–42. Each of these retirement orders stated on its face that it was "BY ORDER OF THE SECRETARY OF THE AIR FORCE." *Id.* ¶ 43 & Exs. 3–19. In addition, each of these retirement orders mandated that the service member would be "RETIRED EFFECTIVE" a date certain—either September 1, October 1, November 1, or December 1, 2025. *Id.* ¶ 42 & Exs. 3–19.

### E. The Air Force impermissibly rescinded Plaintiffs' retirement orders.

In July 2025, Acting Assistant Secretary of the Air Force for Manpower and Reserve Affairs DeFilippi was removed from her position and Brian L. Scarlett, Senior Advisor to the Assistant Secretary of the Army for Manpower and Reserve Affairs, was selected to perform the duties of Assistant Secretary of the Air Force for Manpower and Reserve Affairs. Compl. ¶ 45. On August 4, 2025, Scarlett, Performing the Duties of Assistant Secretary of the Air Force for Manpower and Reserve Affairs, issued a Memorandum, titled "Exception to Policy (ETP) for Temporary Early Retirement Authority (TERA) Decision" (the "August 4 Memorandum"). *Id.* ¶ 46. The August 4 Memorandum stated the following, disapproving Plaintiffs' retirement requests after they had already been granted:

> After careful consideration of the individual applications, I am disapproving all Temporary Early Retirement Authority (TERA) exception to policy requests in Tabs 1 and 2 for members with 15-18 years of service.[2] The decisions were made following the guidance set forth in references (a) [i.e., the February 26 Memorandum] and (b) [i.e., the May 23 Memorandum].

---

[2] Plaintiffs all appeared on Tab 1 or Tab 2 to the August 4 Memorandum. Compl. ¶ 48.

6

> In lieu of TERA, members are eligible for voluntary separation, with eligibility for Voluntary Separation Pay (VSP) at twice the amount of involuntary separation pay. . . .
>
> Service members who elect not to voluntarily separate will be processed for involuntary separation.

*Id.* ¶ 47 & Ex. 21.

Consistent with the August 4 Memorandum, Plaintiffs received orders rescinding their previously approved retirement applications on either August 7 or September 9, 2025. *Id.* ¶¶ 50–51. Crucially, despite being "twice the amount of involuntary separation pay," the Voluntary Separation Pay referenced in the August 4 Memorandum pales in comparison to the retired pay and other benefits to which an approved retirement application entitles a member with 15–18 years of service. *Id.* ¶¶ 47, 49.

Department of the Air Force Instruction 36-3203 ("DAFI 36-3203"), titled "Service Retirements," sets forth the following narrow limitations on rescinding issued retirement orders:

> The appropriate agency *may only revoke, rescind, or amend the order if fraud, manifest error, mathematical error, mistake of law, or substantial new evidence renders the order invalid*. The appropriate agency may amend or rescind retirement orders when, in rare circumstances such as medical hold, civil confinement, or prohibiting conditions listed in Table 3.1 or restrictions listed in Table 3.2, a member cannot complete retirement processing before the effective retirement date. (T-1)

*Id.* ¶ 44 & Ex. 20, § 1.1.4 (emphasis added). Neither the August 4 Memorandum nor any of the orders that Plaintiffs received identified any purported "fraud, manifest error, mathematical error, mistake of law, or substantial new evidence" to justify the rescission of Plaintiffs' retirement orders. *Id.* ¶ 52.

**F.      Plaintiffs sued for violation of 10 U.S.C. § 9329.**

On November 10, 2025, Plaintiffs filed this lawsuit, asserting a single count: "Violation of 10 U.S.C. § 9329." That count boils down to the following allegations:

- Plaintiffs were permitted by the Air Force to request retirement with 15–18 years of service;

- the retirement orders that the Air Force issued entitled Plaintiffs to retire under § 9311 or § 9314, and to therefore begin receiving "retired pay" under § 9329, as of the retirement effective dates in the orders;

- the Air Force rescinded the retirement orders for reasons other than the limited rescission reasons that DAFI 36-3203 permits; and

- "[a]s a direct result of this unlawful and invalid recission of their retirement orders, Plaintiffs are being deprived of the retirement pay to which they are entitled under § 9329."

*See* Compl. ¶¶ 54–63. In their Prayer for Relief, Plaintiffs seek not only "money and other benefits in an amount to be determined at trial"—to compensate them for the retired pay that they should be receiving under § 9329—but also the reinstatement of their retirement orders with credit for any time that they have continued to serve after their retirement effective dates. Compl. at pp. 18–19.

## IV.    ARGUMENT

### A.    Standard of review

To adjudicate this Rule 12(b)(1) motion, the Court must determine whether Plaintiffs "present a claim for 'actual, presently due money damages from the United States.'" *Nat'l Air Traffic Controllers Ass'n v. United States*, 160 F.3d 714, 716 (Fed. Cir. 1998) (quoting *United States v. King*, 395 U.S. 1, 3 (1969)). To conduct this analysis, the Court "can consider . . . evidentiary matters outside the pleadings," such as the exhibits that the United States attached it its motion. *Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 884 (Fed Cir. 1985).

8

**B.      Defendant's motion should be denied because Plaintiffs seek to recover, as damages, the retired pay that they should have been receiving under 10 U.S.C. § 9329 beginning on the retirement effective dates in their unlawfully rescinded retirement orders.**

Despite the United States' insistence to the contrary, *see* Def. Br. at 8-14, Plaintiffs all "present a claim for 'actual, presently due money damages from the United States.'" *Nat'l Air Traffic Controllers Ass'n*, 160 F.3d at 716 (*quoting King*, 395 U.S. at 3). Upon reaching the retirement effective dates mandated by their respective retirement orders—dates that range between four-and-a-half and seven-and-a-half months ago—Plaintiffs were all entitled to receive retired pay under 10 U.S.C. § 9329. *See* Compl. ¶¶ 42, 54–63; *see also Ancman v. United States*, 77 Fed. Cl. 368, 376 (Fed. Cl. 2007) ("Once the Secretary of the Air Force approved plaintiffs' retirement applications, plaintiffs became entitled to retirement pay pursuant to 10 U.S.C. § 8929 [i.e., the predecessor of 10 U.S.C. § 9329].""). And Plaintiffs all seek to recover that retired pay as damages—in addition to seeking reinstatement of their retirement orders with credit for any time that they have continued to serve after their retirement effective dates. *See* Compl. ¶¶ 1, 63 & pp. 18–19.

In support of its motion, the United States cites three cases in which this Court found no subject matter jurisdiction over retirement-related claims. *See* Def. Mot. at 8–9. All three are distinguishable because all three involved claims about the alleged entitlement to retirement benefits at some point *in the future*. *See Wood v. United States*, 214 Ct. Cl. 744, 744–45 (Ct. Cl. 1977) (former CIA employee seeking order permitting future participation in CIA retirement program upon reaching fifty years old); *Jankovic v. United States*, 204 Ct. Cl. 807, 807 (Ct. Cl. 1974) (current Department of State employee seeking "to compel [the United States] to properly credit him the full period of his employment service for the purpose of computing his retirement benefits" that he would receive when he eventually retired); *Prentiss v. United States*, 115 Ct. Cl.

9

78, 80–81 (Ct. Cl. 1949) (current civil servant seeking declaration that "beginning on January 4, 1952, on which date he will be sixty-two years old, the Government should begin to pay him an annuity of $378.81 per annum"). Plaintiffs, by contrast, seek to recover for the denial of an alleged entitlement to *past retirement benefits*—i.e., presently due money damages.

Citing 38 U.S.C. § 5304, the United States also argues that Plaintiffs may not recover retired pay for any periods for which they received active duty pay—even if the retirement effective dates prescribed in their retirement orders had passed and they therefore were entitled to have been retired already. *See* Def. Mot. at 10. This argument fails here for multiple reasons. For starters, whether Plaintiffs ultimately may recover retired pay under 10 U.S.C. § 9329 for the time that they were entitled to have been retired—and whether and to what extent any recovery should be reduced by any active duty pay that they may have received in the interim—goes to the merits, not jurisdiction, and is therefore irrelevant to the adjudication of the United States' RCFC 12(b)(1) motion to dismiss. *See Yant v. United States*, 85 Fed. Cl. 264, 269 (Ct. Cl. 2009) ("Subject matter jurisdiction is determined independently of analyzing whether a plaintiff might ultimately succeed on the merits."). Moreover, the current situation is entirely due to the United States' own egregious conduct: the announcement of the imminent required separation of transgender service members; followed by the issuance of orders granting retirement to Plaintiffs who otherwise would have been subject to that imminent separation requirement; followed by the unlawful recission of those orders; followed by unexplained delays in implementing the separation requirement.

Finally, as the United States highlights in its motion, *see* Def. Mot. at 14, the prescribed retirement effective date for 11 Plaintiffs was December 1, 2025—which post-dates by three weeks the November 10, 2025, filing of the Complaint. *See* Compl. ¶ 42(a), (c), (d), (g), (h), (j)–(m), (p), (q). But there can be no dispute that this December 1, 2025, retirement effective date—as specified

10

in the Complaint and in the retirement orders attached to it, *id.* ¶ 42(a), (c), (d), (g), (h), (j)–(m), (p), (q) & Exs. 3, 5, 6, 9, 10, 12–15, 18, 19—has now long passed. And the United States itself chose to attach to its March 16, 2026, RFCF 12(b)(1) motion a Declaration executed on February 27, 2026, by the Director of Personnel Programs at the Air Force Personnel Programs that detailed and attached records showing the then-current personnel status of all 17 Plaintiffs. *See* Def. Mot. at App. 22–54; *see also Power Density Solutions LLC v. United States*, 159 Fed. Cl. 208, 211 n.2 (Fed. Cl. 2022) (considering "jurisdictional facts drawn from the government's briefs and the attached appendices" in ruling on an RCFC12(b)(1) motion). February 27, 2026, is nearly four months after December 1, 2025. Requiring Plaintiffs nonetheless to supplement their Complaint to plead that the December 1, 2025, retirement effective date has passed would be inefficient and needlessly elevate form over substance.

## V.    CONCLUSION

For all these reasons, Plaintiffs request that the Court deny Defendant's partial motion to dismiss and permit all Plaintiffs to proceed with their claims.

Date: April 13, 2026

Respectfully submitted,

/s/ Eli Segal

| | |
|---|---|
| Jennifer Levi (*pro hac vice*) | Eli Segal (counsel of record) |
| Michael Haley (*pro hac vice*) | STAPLETON SEGAL COCHRAN LLC |
| GLBTQ LEGAL ADVOCATES & DEFENDERS | 1760 Market Street, Suite 403 |
| 18 Tremont Street, Suite 950 | Philadelphia, PA 19103 |
| Boston, MA 02108 | esegal@stapletonsegal.com |
| jlevi@gladlaw.org | T: (215) 402-6555 |
| mhaley@gladlaw.org | |
| T: (617) 426-1350 | |
| | |
| Shannon P. Minter (*pro hac vice pending*) | Jeremy S. Spiegel (of counsel) |
| Christopher F. Stoll (*pro hac vice pending*) | LAW OFFICE OF JEREMY SPIEGEL |
| NATIONAL CENTER FOR LGBTQ RIGHTS | 123 South Broad Street, Suite 1850 |

11

1401 21st St. #11548
Sacramento, CA 95811
sminter@nclrights.org
cstoll@nclrights.org
T: (415) 392-6257

Philadelphia, PA 19109
spiegel@jeremyspiegellaw.com
T: (215) 609-3154

12