# In the United States Court of Federal Claims

|  |  |
|---|---|
| LOGAN IRELAND, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) No. 25-1921 |
| v. | ) (Filed: July 22, 2026) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Eli Mordecai Segal, Stapleton Segal Cochran LLC, Philadelphia, PA, with whom were Jennifer Levi and Michael Haley, GLBTQ Legal Advocates & Defenders, Boston, MA, Shannon P. Minter and Christopher F. Stoll, National Center for LGBTQ Rights, Sacramento, CA, and Jeremy S. Spiegel, Law Office of Jeremy Spiegel, Philadelphia, PA, for Plaintiffs.

William P. Rayel, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, with whom were Douglas K. Mickle, Acting Deputy Director, Patricia M. McCarthy, Director, and Brett A. Shumate, Assistant Attorney General, for Defendant. Michelle M. Laurence, Major, U.S. Air Force, Chief, Military Personnel Law and Litigation Branch, Judge Advocate General's Corps, Joint Base Andrews-Naval Air Facility, MD, Of Counsel.

## OPINION AND ORDER

**KAPLAN, Judge.**

Plaintiffs in this suit are seventeen current or former members of the United States Air Force or the United States Space Force who were made ineligible for continued service by Executive Order 14,183, solely because they are transgender. See Exec. Order No. 14,183, 90 Fed. Reg. 8757 (Jan. 27, 2025). At the time this action was filed, each of the plaintiffs had completed between fifteen and eighteen years of military service and had requested an early retirement as an exception to policy, consistent with the Secretary of the Air Force's authority under the National Defense Authorization Act for Fiscal Year 2017, 114 Pub. L. No. 328, 130 Stat. 2000 (2016). Compl. ¶¶ 40–42, 56.

In June 2025, the Air Force notified Plaintiffs that their requests for early retirement had been approved, and it issued each of them retirement orders with effective dates of either September 1, October 1, November 1, or December 1, 2025. Id. ¶¶ 41–42. In August and September of 2025, however, the Air Force purported to rescind the retirement orders. Id. ¶¶ 46–48. Instead of retirement, the Air Force advised Plaintiffs, they would be eligible for Voluntary Separation Pay ("VSP"). Id. While the VSP was twice the amount Plaintiffs would have received as involuntary separation pay, it was still substantially less than the retired pay and other benefits the Plaintiffs would have received had their previously approved retirement orders not been rescinded. Id.

In this action, Plaintiffs contend that the rescission of their retirement orders violated Department of the Air Force Instruction 36-3203 ("DAFI 36-3203"), entitled "Service Retirements." Id. ¶ 1. It states, with exceptions not relevant here, that the Air Force "may only revoke, rescind, or amend [a retirement] order if fraud, manifest error, mathematical error, mistake of law, or substantial new evidence renders the order invalid." Pls.' Ex. 20, ECF No. 1-21. As the Air Force has never asserted that any of these circumstances existed or formed the basis for rescinding Plaintiffs' retirement orders, Plaintiffs claim, the rescissions were unlawful and invalid. Compl. ¶ 52 (citing Pls.' Ex. 20); id. ¶¶ 59–61. And because the rescissions were improper, they allege, their retirement orders remain valid and effective. Id. ¶ 62.

Plaintiffs claim that they have been illegally denied the retirement pay and benefits to which they are entitled under 10 U.S.C. § 9239. Id. ¶ 63. They request that the Court order that the rescission of their retirement orders was unlawful and invalid and that it award them "money and other benefits in an amount to be determined at trial." Compl. at 18. In addition, Plaintiffs ask the Court to order that their rescinded retirement orders be reinstated and that their military records "be corrected accordingly, with the retirement effective dates and durations of service adjusted to account for any days that Plaintiffs continue to serve after the retirement effective dates specified in the rescinded orders." Id. at 18–19.

The government has moved to dismiss the claims of sixteen of the seventeen plaintiffs under RCFC 12(b)(1). According to the government, the Court lacks jurisdiction over those plaintiffs' claims because they do not seek "presently due monetary damages, as required for this Court to have jurisdiction to entertain a complaint under 28 U.S.C. § 1491(a)(1)." Def.'s Partial Mot. to Dismiss at 2 [hereinafter Def.'s Mot.], ECF No. 16. The government contends that no money damages were "presently due" to the sixteen plaintiffs at the time their complaint was filed because they were on active duty and receiving active-duty pay. Id. Indeed, twelve plaintiffs are still on active-duty status and so, according to the government, are "statutorily ineligible for the lower retirement pay to which they claim that they are entitled." Id. at 4; see also 38 U.S.C. § 5304(c) ("Pension, compensation, or retirement pay on account of any person's own service shall not be paid to such person for any period for which such person receives active service pay.").[1]

The Court has carefully considered the government's arguments. For the reasons set forth below, the Court concludes that those arguments largely go to the merits of Plaintiffs' claims for retirement pay and not to the Court's jurisdiction to hear them. Therefore, the government's partial motion to dismiss for lack of jurisdiction is **DENIED**.

## **BACKGROUND**

### I.    Executive Order 14,183

On January 27, 2025, President Donald J. Trump issued Executive Order 14,183 ("EO"). 90 Fed. Reg. 8757 (Jan. 27, 2025). That Order, entitled "Prioritizing Military Excellence and

---

[1] Three additional plaintiffs have left active-duty service since the government filed its motion to dismiss, bringing the total of those still on active duty to nine. See Def.'s Notice Regarding Def.'s Partial Mot. to Dismiss, ECF No. 20.

Readiness," states that "it is the policy of the United States Government to establish high standards for troop readiness, lethality, cohesion, honesty, humility, uniformity, and integrity." Id. It declares that "the medical, surgical, and mental health constraints on individuals with gender dysphoria" are "inconsistent" with these high standards. Id. [2] Also inconsistent with the military's "high standards," according to the Order, is what it characterizes as "shifting pronoun usage or use of pronouns that inaccurately reflect an individual's sex." Id. Further, the Order states that "[e]xpressing a false 'gender identity' divergent from an individual's sex cannot satisfy the rigorous standards necessary for Military Service." Id.

Under the EO, the President directed the Secretary of Defense ("the Secretary") to update Department of Defense ("DoD") medical standards within 60 days "to reflect the purposes and policy of [the] Order." Id. The Order further instructed the Secretary to "promptly issue directives for DoD to end invented and identification-based pronoun usage to best achieve the policy outlined in section 2 of this order." Id.

On February 7, 2025, and effective immediately, the Secretary paused "all new accessions to the military for individuals with a history of gender dysphoria," as well as "all unscheduled, scheduled, or planned medical procedures associated with affirming or facilitating a gender transition." App. to Def.'s Mot. at 1, ECF No. 16-1 ("Memorandum for Senior Pentagon Leadership Commanders of the Combatant Commands Defense Agency and DoD Field Activity Directors"). The Secretary also authorized the Under Secretary of Defense for Personnel and Readiness to issue additional policy and implementation guidance regarding service by members of the military with a current diagnosis or history of gender dysphoria. Id.

The Office of the Undersecretary issued implementing guidance on February 26, 2025. See App. to Def.'s Mot. at 2–14 [hereinafter Selnick Memo]. Consistent with the EO, the guidance stated that "[m]ilitary service by Service members and applicants for military service who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria is incompatible with military service," "is not in the best interests of the Military Services and is not clearly consistent with the interests of national security." Id. at 4.

The guidance stated that servicemembers with a current diagnosis or history of, or who exhibit symptoms consistent with, gender dysphoria would be processed for separation from

---

[2] According to the Fifth Edition of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, "gender dysphoria" is a condition characterized by a "marked incongruence between one's experienced/expressed gender and assigned gender, of at least 6 months' duration, as manifested by," among other things, "a strong desire to be the other gender (or some alternative gender different from one's assigned gender)," "a strong desire to be treated as the other gender," or "a strong desire for the primary and/or secondary sex characteristics of the other gender." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders: Fifth Edition, 452 (5th ed. 2013). The Manual indicates that not all persons who are transgender suffer from gender dysphoria, stating that a clinical diagnosis of gender dysphoria should be "limited to those individuals whose distress and impairment meet the specified criteria." Id. at 458; see also id. at 451 (defining "gender dysphoria" and "transgender").

military service, with a characterization of their service as "honorable" unless their service record warranted a lower characterization. Id. It further advised that servicemembers could elect to separate voluntarily within the next 30 days and "may be eligible for voluntary separation pay in accordance with 10 U.S.C. § 1175a and [DoD Instruction ("DoDI")] 1332.43." Id. at 10. Eligible servicemembers would "be paid at a rate twice the amount due a servicemember eligible for involuntary separation pay, in accordance with DoDI 1332.29." Id. The guidance further provided that servicemembers "with over 18, but less than 20 years of total active-duty service are eligible for early retirement under the Temporary Early Retirement Authority in accordance with DoDI 1332.46." Id.[3]

## II.      Statutory Framework

Under the statutory provisions that govern the retirement of members of the Air Force and Space Force, the Secretary of the Air Force is authorized to retire regular or reserve commissioned officers upon their request where they have at least twenty years of service computed under section 9326 of title 10, at least ten years of which were in active service as a commissioned officer. 10 U.S.C. § 9311. Enlisted members of the Air Force or the Space Force are eligible to be retired upon their request where they have at least twenty, but less than thirty, years of service computed under section 9325 of title 10. Id. § 9314. In both situations, the servicemember "is entitled to retired pay computed under chapter 945 of [title 10]." Id. § 9329.

In 1993, Congress temporarily authorized the Secretaries of the Army, Navy, and Air Force to make early retirement available to members with fifteen to twenty years of service under the Temporary Early Retirement Authority ("TERA"). See National Defense Authorization Act for Fiscal Year 1993, 102 Pub. L. No. 102-484, § 4403(b), (e), 106 Stat. 2315, 2702 (1992); see also id. § 4403(b)(3) (stating that the Secretary of the Air Force may make retirement available to members with at least fifteen years of service). TERA provides "the Secretary of Defense with a 'temporary additional force management tool with which to affect the drawdown of military forces.'" Clary v. United States, 333 F.3d 1345, 1347 (Fed. Cir. 2003) (quoting § 4403(a), 106 Stat. at 2702). Initially slated to end in 1995, this temporary authority has been extended several times, most recently to December 31, 2030. See id.; National Defense

---

[3] On March 18, 2025, the United States District Court for the District of Columbia issued a preliminary injunction enjoining the implementation of the Selnick Memo. See Talbott v. United States, 775 F. Supp. 3d 283 (D.D.C. 2025), aff'd in part, vacated in part, 176 4th 720 (D.C. Cir. 2026). The preliminary injunction was subsequently stayed pending appeal. See Talbott v. United States, 775 F. Supp. 3d 445, 455 (D.D.C. 2025); Talbott v. United States, No. 25-5087, 2025 WL 3533344, at *1 (D.C. Cir. Dec. 9, 2025). Ultimately, the United States Court of Appeals for the District of Columbia Circuit maintained the preliminary injunction for current servicemembers. Talbott v. United States, 176 F.4th 720, 729 (D.C. Cir. 2026). Similar litigation is taking place in Washington state where a preliminary injunction was issued by the United States District Court for the Western District of Washington. Shilling v. United States, 773 F. Supp. 3d 1069, 1108 (W.D. Wash. 2025); see also United States v. Shilling, 145 S. Ct. 2695 (2025) (staying the preliminary injunction "pending the disposition of the appeal in the United States Court of Appeals for the Ninth Circuit and disposition of a petition for a writ of certiorari").

Authorization Act for Fiscal Year 2026, Pub. L. No. 119-60, § 603, 139 Stat. 718, 905–06 (2025).

### III.    The DeFilippi Memo

On May 23, 2025, Gwendolyn DeFilippi, the then-Acting Assistant Secretary of the Air Force for Manpower and Reserve Affairs, issued a memorandum entitled "Additional [Department of the Air Force] Implementing Policy on Prioritizing Military Excellence and Readiness" ("DeFilippi Memo"). Pls.' Ex. 1, at 2, ECF No. 1-2. The Memo stated that servicemembers "with a current diagnosis or history of, or who exhibit symptoms consistent with, gender dysphoria" "may apply for voluntary retirement or, if eligible, [TERA]." Id. at 1–2. TERA would be permitted in accordance with the Selnick Memo for servicemembers with over eighteen but less than twenty years of service. Id. at 2. Individuals who, like Plaintiffs, had fifteen to eighteen years of service would be allowed to request TERA as an "exception to policy," and servicemembers who had already applied for voluntary separation were permitted to withdraw their applications and apply for early retirement instead. Id.

The DeFilippi Memo instructed that the voluntary separation/retirement window would be open for servicemembers who self-identified as having "a current diagnosis or history of, or who exhibit[ed] symptoms consistent with, gender dysphoria." Id. at 1–2, 4. The application window would be open through June 6, 2025, for Regular Air Force and Space Force members and July 7, 2025, for Air Reserve Component members. Id. at 2.

### IV.    Plaintiffs' Retirement Orders

Acting Assistant Secretary DeFilippi approved each plaintiff's request for early retirement in June 2025 and, as noted above, issued them retirement orders with specified effective dates of either September 1, October 1, November 1, or December 1, 2025. Compl. ¶¶ 41–42.

In July 2025, Acting Assistant Secretary DeFilippi left her position and was replaced by Senior Advisor Brian Scarlett. Id. ¶ 45. Shortly thereafter, on August 4, 2025, Senior Advisor Scarlett, now performing the duties of the Assistant Secretary, issued a Memorandum titled "Exception to Policy (ETP) for Temporary Early Retirement Authority (TERA) Decision." Pls.' Ex. 21, ECF No. 1-22. In it, he announced that "[a]fter careful consideration of the individual applications," he was disapproving all of the TERA exception to policy requests for members with fifteen to eighteen years of service. Id. He further stated that "[t]he decisions were made following the guidance set forth in [the Selnick Memorandum] and [the DeFilippi Memorandum]." Id. In lieu of early retirement, the Memorandum stated, members would be eligible for voluntary separation, with eligibility for voluntary separation payments set at twice the amount of involuntary separation pay. Id. Thereafter, all of the plaintiffs received orders that rescinded their previous retirement orders. Compl. ¶¶ 50–51.

### V.    This Action

On November 10, 2025, Plaintiffs filed the present action. They allege that in accordance with Air Force Instruction 36-3203, a retirement order may only be rescinded in limited circumstances—none of which are present here. Compl. ¶¶ 59–62. They further allege that—

because the rescission of their retirement orders was unlawful—those orders remain valid and effective. Id. ¶ 62. Plaintiffs also assert that as a result of the unlawful rescission of their orders, they are being deprived of the retirement pay to which they claim entitlement under 10 U.S.C. § 9329. Id. ¶ 63; see 10 U.S.C. § 9329 ("A member of the Air Force or the Space Force retired under this chapter is entitled to retired pay computed under chapter 945 of this title.").

Plaintiffs request that the Court award them money and other benefits and direct the Air Force to reinstate their unlawfully rescinded retirement orders and correct their military records. Compl. at 18–19.

## VI.    The Government's Motion to Dismiss

On March 16, 2026, the government filed a motion under RCFC 12(b)(1) to dismiss the claims of sixteen of the seventeen plaintiffs (i.e., all plaintiffs with the exception of Technical Sergeant Sterrett). Def.'s Mot. at 1. It contends that this Court lacks jurisdiction over those sixteen plaintiffs' claims because they are not seeking "presently due monetary damages" as required for this Court to exercise jurisdiction over their claims under 28 U.S.C. § 1491(a)(1). Id. at 8. This is so, according to the government, because at the time these sixteen plaintiffs filed their complaint, they were all still on active duty and receiving active-duty pay. Id. at 9. The government contends their receipt of active-duty pay makes them statutorily ineligible for the lower retirement pay to which they claim entitlement. Id. at 10–11. Therefore, the government argues, none of these plaintiffs are seeking presently due money damages. Rather, according to the government, they seek "a declaration that they are entitled to retirement pay at some future time and injunctive relief to effect those future payments," relief that this Court lacks the authority to provide them. Id. at 2.

## DISCUSSION

## I.    Standards Governing Motions to Dismiss Under RCFC 12(b)(1)

In assessing a defendant's motion to dismiss for lack of subject-matter jurisdiction, the Court accepts all undisputed facts as true and "draw[s] all reasonable inferences in favor of the plaintiff." Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011). The Court also considers exhibits attached to the pleadings and matters of which it may take judicial notice, Rocky Mountain Helium, LLC v. United States, 841 F.3d 1320, 1325 (Fed. Cir. 2016) (citing Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007)), and may "inquire into jurisdictional facts that are disputed," Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991) (first citing Hamlet v. United States, 873 F.2d 1414, 1416 (Fed. Cir. 1989); and then citing Heisig v. United States, 719 F.2d 1153, 1153) (Fed. Cir. 1983)). It is a plaintiff's burden to establish jurisdiction. Norsk Hydro Can., Inc. v. United States, 472 F.3d 1347, 1355 (Fed. Cir. 2006) (citing Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994)).

## II.    Pre-Requisites to Assertion of Jurisdiction Under the Tucker Act

The Tucker Act grants the United States Court of Federal Claims authority "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding

in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act serves as both a jurisdictional grant and waiver of the government's sovereign immunity, but it does not supply a substantive cause of action. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008) (quoting Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005)). To establish this court's jurisdiction, therefore, a plaintiff "must identify a separate source of substantive law that creates the right to money damages," i.e., a constitutional provision, statute, or regulation that "'can fairly be interpreted as mandating compensation by the Federal Government' . . . and is 'reasonably amenable to the reading that it mandates a right of recovery in damages.'" Id. (first quoting Fisher, 402 F.3d at 1172; then quoting United States v. Mitchell, 463 U.S. 206, 217 (1983); and then quoting United States v. White Mountain Apache Tribe, 537 U.S. 465, 473 (2003)).

### III.    Plaintiffs' Complaint Alleges Violation of Money-Mandating Statutory Provisions

Plaintiffs' claims for military retirement pay are based on the allegedly illegal rescission of their retirement orders and are founded upon a combination of statutory provisions. First, section 4403 of the National Defense Authorization Act for Fiscal Year 1993 gave the Secretary the authority to apply the provisions of sections 8911 and 8914 (now sections 9311 and 9314) of title 10, United States Code, to permit the early retirement of servicemembers with at least fifteen but less than twenty years of service. The Secretary exercised his discretion to invoke that authority and the Air Force issued retirement orders to Plaintiffs. Once that occurred, Plaintiffs were statutorily entitled to receive retired pay. See 10 U.S.C. § 9329 ("A member of the Air Force or the Space Force retired under this chapter is entitled to retired pay computed under chapter 945 of this title.").

In short, these statutory provisions "can fairly be interpreted as mandating compensation by the Federal Government" and can reasonably be read to mandate a right of recovery in damages. They therefore satisfy the requirement that Plaintiffs' claims be based on a money-mandating source of law. United States v. Testan, 424 U.S. 392, 401–02 (1976) (citing Eastport S.S. Corp. v. United States, 372 F.2d 1002, 1008–09 (Ct. Cl. 1967)).

Moreover, Plaintiffs have "made a nonfrivolous allegation that [they are] within the class of plaintiffs entitled to recover under the money-mandating source," Jan's Helicopter Serv., 525 F.3d at 1309, because their early retirement was initially approved by the Air Force and they received retirement orders with effective retirement dates in September, October, November, and December 2025, Compl. ¶¶ 41–43. As noted, they assert that under Air Force regulations the retirement date could only be revoked or rescinded "if fraud, manifest error, mathematical error, mistake of law, or substantial new evidence renders the order invalid," or if "a member cannot complete retirement processing before the effective retirement date." Id. ¶ 44 (citing DAFI 36-3203). They further allege that the Air Force did not and could not have relied upon these grounds when it rescinded their retirement orders in August and September 2025. Id. ¶¶ 45–52.

### IV.    The Government's Arguments

Notwithstanding the foregoing, the government contends that the claims of all but one of the seventeen plaintiffs (Technical Sargeant Sterret) are not within the Court's jurisdiction. It observes that "[u]nder 28 U.S.C. § 1491(a)(1), a plaintiff seeking to invoke the court's jurisdiction must present a claim for 'actual, presently due money damages from the United

States.'" Def.'s Mot. at 8 (quoting Nat'l Air Traffic Controllers Ass'n v. United States, 160 F.3d 714, 716 (Fed. Cir. 1998)). The sixteen plaintiffs who were on active duty at the time the complaint was filed have not met that requirement, the government says, because 38 U.S.C. § 5304(c) states that "[p]ension, compensation, or retirement pay on account of any person's own service shall not be paid to such person for any period for which such person receives active service pay." Def.'s Mot. at 10. Therefore, the government continues, no moneys are "presently due" these sixteen plaintiffs. As such, what these plaintiffs must really be seeking is "a declaration that they are entitled to retirement pay at some future time" (i.e., after their active-duty service ends) and "injunctive relief to effect those future payments." Id. at 2.

The government's arguments conflate the merits of Plaintiffs' claims with the establishment of this Court's jurisdiction. The Court agrees that to invoke its jurisdiction, Plaintiffs must assert a claim for presently due money damages under a money-mandating statute or regulation. But it disagrees with the government's apparent contention that they must also establish that money damages are presently due by proving the merits of their claims. See Greenlee Cnty. v. United States, 487 F.3d 871, 875 (Fed. Cir. 2007) (rejecting government's argument "that whether a statute is money mandating for purposes of Tucker Act jurisdiction depends on whether the plaintiff on the merits can make out a claim under the statute"); see also id. at 876 ("Only after . . . the Court of Federal Claims takes jurisdiction over the case does it consider the facts specific to the plaintiff's case to determine whether on the facts the plaintiff's claim falls within the terms of the statutes."); Fisher, 402 F.3d at 1175–76 ("Assuming that the Court of Federal Claims has taken jurisdiction over the cause as a result of the initial determination that plaintiff's cause rests on a money-mandating source, the consequence of a ruling by the court on the merits, that plaintiff's case does not fit within the scope of the source, is simply this: plaintiff loses on the merits for failing to state a claim on which relief can be granted."); Jan's Helicopter Serv., 525 F.3d at 1309 ("In determining whether the Court of Federal Claims has jurisdiction, all that is required is a determination that the claim is founded upon a money-mandating source and the plaintiff has made a nonfrivolous allegation that it is within the class of plaintiffs entitled to recover under the money-mandating source. There is no further jurisdictional requirement that the court determine whether the additional allegations of the complaint state a nonfrivolous claim on the merits.").

Plaintiffs seek money damages based on "lost retirement pay." Compl. ¶ 1. They claim that those damages are "presently due" because the effective dates of their unlawfully rescinded retirement orders have already passed, yet they were not allowed to retire and not afforded retirement pay. See id. They allege that "[a]s a direct result" of the unlawful rescission of their retirement orders they "are being deprived of the retirement pay to which they are entitled under § 9329." Id. ¶ 63.

The Court is not persuaded by the government's contention that Plaintiffs' argument is "contradicted" by certain language in their complaint. Def.'s Reply to Pls.' Resp. to Def.'s Partial Mot. to Dismiss at 1 [hereinafter Def.'s Reply], ECF No. 18. Specifically, the government notes that the complaint asks the Court to order that Plaintiffs' rescinded retirement orders be reinstated "with the retirement effective dates and durations of service adjusted to account for any days that Plaintiffs continue to serve after the retirement effective dates specified in the rescinded orders[.]" Def.'s Reply at 1–2 (quoting Compl. ¶¶ 18–19). However, the fact that Plaintiffs contemplate seeking adjustments to the damages due based on their continued

active-duty status and acknowledge that some offset may be required to account for active-duty pay they have received, relates to the amount of monetary relief they are due—a merits issue properly before this Court. It has no bearing on whether they are claiming an entitlement to presently due money damages for jurisdictional purposes.

Further, the three Court of Claims cases the government cites in support of its jurisdictional argument are clearly distinguishable. See Def. Mot. at 8–9 (citing Wood v. United States, 556 F.2d 1188, 1188 (Ct. Cl. 1977); Jankovic v. United States, 204 Ct. Cl. 807, 807 (1974); Prentiss v. United States, 115 Ct. Cl. 78, 80–81 (1949)). All involved claims alleging an entitlement to retirement benefits that had not yet accrued but that would become ripe at some future date.[4] Here, Plaintiffs allege that their entitlement to benefits already accrued on the effective dates set forth in their retirement orders.

In short, for the reasons set forth above, Plaintiffs' claims are based on alleged violations of money-mandating statutory provisions. In addition, Plaintiffs have made non-frivolous allegations that they are within the class of plaintiffs entitled to recover under those provisions. Moreover, their complaint reflects that they are seeking presently due money damages. This Court therefore has jurisdiction over Plaintiffs' claims under the Tucker Act.

## V. Plaintiffs Who Filed Suit Before the Retirement Dates Set Forth in Their Orders

"Generally, 'jurisdiction of the court depends upon the state of things at the time of the action is brought.'" Cent. Pines Land Co. v. United States, 697 F.3d 1360, 1365 (Fed. Cir. 2012) (quoting Grupo Dataflux v. Atlas Glob. Grp., 541 U.S. 567, 570 (2004)). The complaint in this case was filed on November 10, 2025. As of that date, the claims of eleven of the plaintiffs had not yet accrued because the retirement date set forth in their orders was December 1, 2025. See Compl. ¶ 42. The government argues the Court lacks jurisdiction to adjudicate these plaintiffs' claims because at the time of filing, they had no claim for presently due money damages. Def.'s Reply at 6. Rather, the government argues, what those eleven plaintiffs sought was a declaration that they would be entitled to retirement pay three weeks in the future. See Def.'s Mot. at 14.

The Court agrees with the government that it is problematic from a jurisdictional standpoint that—at the time the suit was filed—the claims of eleven plaintiffs for retirement benefits had not yet accrued. But that defect, as the government itself acknowledges, is easily remedied by having Plaintiffs file a supplemental complaint which alleges that since their original complaint was filed, the effective dates of their retirements as set forth in the allegedly unlawfully rescinded orders have passed. See Def.'s Mot. at 14 n.7; RCFC 15(d) ("On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental

---

[4] In Wood, a former CIA employee sought an order that would permit him to participate in the agency retirement program when he reached the age of fifty. 556 F.2d at 1188. In Jankovic, a federal employee sought to compel the government to credit him the full period of his employment service for purposes of calculating retirement benefits that he would not receive until he eventually retired. 204 Ct. Cl. at 807. Similarly, in Prentiss, a current government employee sought a declaration that "beginning on January 4, 1952, on which date he will be sixty-two years old, the Government should begin to pay him an annuity of $378.81 per annum." 115 Ct. Cl. at 81.

pleading setting out any transactions, occurrence, or event that happened after the date of the pleading to be supplemented. The court may order supplementation even though the original pleading is defective in stating a claim or defense."); see also Black v. Sec'y of Health & Hum. Servs., 93 F.3d 781, 790 (Fed. Cir. 1996) ("[A] defect in the plaintiff's case, even a jurisdictional defect, can be cured by a supplemental pleading under Rule 15(d) in appropriate circumstances." (citing Mathews v. Diaz, 426 U.S. 67, 75 (1976))).

The Court therefore grants Plaintiffs leave to file a supplemental complaint to address the potential jurisdictional defect in their complaint by alleging that the retirement dates set forth in all plaintiffs' retirement orders have now passed but that they have not received any retirement pay. With that understanding, the Court will deny the government's motion to dismiss in its entirety.

## CONCLUSION

For these reasons, the government's Partial Motion to Dismiss, ECF No. 16, is **DENIED**. Plaintiffs may file their supplemental complaint by August 4, 2026. The parties shall file a Joint Motion for Entry of a Scheduling Order pursuant to RCFC App. K, Rule II by August 11, 2026**.**

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge