No. 25-1921C
Judge Kaplan

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

LOGAN IRELAND, et. al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S PARTIAL MOTION TO DISMISS AND MOTION FOR A VOLUNTARY REMAND AND STAY

---

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. MCCARTHY
Director

DOUGLAS K. MICKLE
Acting Deputy Director

WILLIAM P. RAYEL
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
United States Department of Justice
PO Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 616-0302
Fax: (202) 307-0972
E-mail: William.Rayel@usdoj.gov

OF COUNSEL:

MICHELLE M. LAURENCE, Major, USAF
Chief
Military Personnel Law and Litigation Branch
The Judge Advocate General's Corps
1500 West Perimeter Rd., Suite 1370
Joint Base Andrews-Naval Air Facility, MD 20762

Dated: August 11, 2026

Attorneys for Defendant

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ iii

STATEMENT OF THE ISSUES ........ 3

STATEMENT OF THE CASE ........ 3

ARGUMENT ........ 7

I. Standards of Review ........ 7

A. Standard For A RCFC 12(b)(1) Motion To Dismiss ........ 7

B. Standard For A RCFC 12(b)(1) Motion To Dismiss ........ 8

C. Standard For A Voluntary Remand ........ 8

II. The Claims of Lt Col Davis, TSgt Walley, And TSgt Hunt Are Moot ........ 9

A. Standard For Mootness ........ 9

B. Lt Col Davis, TSgt Walley, And TSgt Hunt Are Not Presently Suffering From An Injury In Fact That Can Be Redressed By This Court Because They Have Been Retired With Higher Gross Monthly Retirement Pay Due To Their Additional Active Service Between The Effective Dates Of Their Rescinded Retirement Orders And Their New Retirement Orders ........ 10

C. This Case Does Not Involve The Voluntary Cessation Of A Challenged Practice And, Even If Did, The New Retirement Orders Of Lt Col Davis, TSgt Walley, And TSgt Hunt Have Completely And Irrevocably Eradicated The Effects Of The Allegedly Illegal Rescission Of Their Previous Retirement Orders, And There Is No Reasonable Expectation That Their New Retirement Orders Will Be Rescinded Pursuant To Department Of War (DoW) Gender Dysphoria Policy ........ 13

III. The Court Should Remand The Remaining Plaintiffs' Claims To The AFBCMR ........ 15

CONCLUSION ........ 17

**Index to Appendix**

Script for Commanders to Applicants regarding TERA Exception to Policy Denial and Separation Notification ........ App. 1

TSgt Hunt Retirement Orders, dated July 21, 2026 .......... App. 7

TSgt Hunt DD 214, dated July 28, 2026 .......... App. 8

Declaration of Deborah F. Davidson, dated August 11, 2026 .......... App. 12

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*A&D Auto Sales, Inc. v. United States*,
748 F.3d 1142 (Fed. Cir. 2014) .......... 8

*Alder Terrace, Inc. v. United States*,
161 F.3d 1372 (Fed. Cir. 1998) .......... 7

*Antonellis v. United States*,
723 F.3d 1328 (Fed. Cir. 2013) .......... 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 8

*Chapman Law Firm Co. v. Greenleaf Constr. Co.*,
490 F.3d 934 (Fed. Cir. 2007) .......... 13

*Cnty. of Los Angeles v. Davis*,
440 U.S. 625 (1979) .......... 13

*DeFunis v. Odegaard*,
416 U.S. 312 (1974) .......... 9, 13

*Fla. Power & Light Co. v. Lorion*,
470 U.S. 729 (1985) .......... 16

*Holley v. United States*,
124 F.3d 1462 (Fed. Cir. 1997) .......... 7

*Indium Corp. of Am. v. Semi-Alloys, Inc.*,
781 F.2d 879 (Fed. Cir. 1985) .......... 7

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 9

*MVM, Inc. v. United States*,
177 Fed. Cl. 201 (2025) .......... 10

*Myers Investigative and Sec'y Servs., Inc. v. United States*,
275 F.3d 1366 (2002) .......... 9

*Perez v. United States*,
156 F.3d 1366 (Fed. Cir. 1998) .......... 8

*Rahman v. United States*,
149 Fed. Cl. 685 (2020) .................... 9

*SKF USA Inc. v. United States*,
254 F.3d 1022 (Fed. Cir. 2001) .................... 9

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .................... 9

*United States Parole Comm'n v. Geraghty*,
445 U.S. 388 (1980) .................... 9

*Yang v. United States*,
149 Fed. Cl. 277 (2020) .................... 16, 17

*Walls v. United States*,
582 F.3d 1358 (Fed. Cir. 2009) .................... 16

*Weeks Marine, Inc. v. United States*,
575 F.3d 1352 (Fed. Cir. 2009) .................... 10

*Wolfing v. United States*,
144 Fed. Cl. 516 (2019) .................... 9

**Statutes**

10 U.S.C. § 1405 .................... 11

10 U.S.C. § 1407(c)(1) .................... 11, 12

10 U.S.C. § 1409(b) .................... 11, 12

38 U.S.C. § 5304(c) .................... 12

National Defense Authorization Act for Fiscal Year 1993,
Pub. L. 102-484, § 4403(e), 106 Stat. 2315 (1992) .................... 11

**Rules**

RCFC 12(b) .................... 1, 7, 8

RCFC 15(d) .................... 7

RCFC 52.2 .......... 2, 8

RCFC App. K ¶ 3 .......... 3

**Code of Federal Regulations**

32 C.F.R. § 865.3(c)(3) .......... 15

**Other Authorities**

Exec. Order No. 14061, Adjustments of Certain Rates of Pay, 86 Fed. Reg. 73601 (2021) .......... 11

Exec. Order No. 14090, Adjustments of Certain Rates of Pay,, 87 Fed. Reg. 79985 (2022) .......... 11

Exec. Order No. 14113, Adjustments of Certain Rates of Pay, 88 Fed. Reg. 89259 (2023) .......... 11

Exec. Order No. 14132, Adjustments of Certain Rates of Pay, 89 Fed. Reg. 106963 (2024) .......... 11

Executive Order 14183, Prioritizing Military Excellence and Readiness, 90 Fed. Reg. 8757 (Jan. 27, 2025) .......... 3

Exec. Order No. 14368, Adjustments of Certain Rates of Pay, 90 Fed. Reg. 60521 (2025) .......... 11

Department of Defense Instruction 1332.46 .......... 4

Secretary of Defense, Prioritizing Military Excellence and Readiness (Feb. 7, 2025) .......... 4

Office of Under Secretary of Defense for Personnel and Readiness (OUSD (P&R)), Additional Guidance on Prioritizing Military Excellence and Readiness (Feb. 26, 2025) .......... 4, 5, 14, 16

DAFI 36-3203 § 1.1.4 (July 8, 2025) .......... 6, 15, 16, 17

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| LOGAN IRELAND, et. al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 25-1921C |
| | ) | (Judge Kaplan) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S PARTIAL MOTION TO DISMISS AND MOTION FOR A VOLUNTARY REMAND AND STAY**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully requests that the Court dismiss the claims of Lieutenant Colonel (Lt Col) Davis, Technical Sergeant (TSgt) Walley, and TSgt Hunt because their claims are moot. Plaintiffs' complaint alleges that their retirement orders were illegally rescinded. Within the last few months, however, Lt Col Davis, TSgt Walley, and TSgt Hunt were all issued new retirement orders with additional active service credit for the period between the effective dates of their rescinded retirement orders and their new retirement orders, which means that their gross monthly retirement pay is *higher* than it would have been under their rescinded retirement orders.

Also, between the effective date of these plaintiffs' rescinded retirement orders and the effective dates of their new retirement orders, they remained on active duty, which meant that they received substantially *more* military pay during those periods than they would have received if they had been retired pursuant to the rescinded orders. As a matter of law, plaintiffs cannot receive both active duty pay and retirement pay for the same period. Although plaintiffs have suggested that they should be able to recover retroactive retirement pay for periods when they were on active duty without an offset for their higher active-duty pay, they have provided no

legal basis for that suggestion, nor are we aware of any. Accordingly, there is no further relief that the Court can grant Lt Col Davis, TSgt Walley, and TSgt Hunt, and their claims should be dismissed as moot or, alternatively, for failure to state a claim.[1]

Pursuant to RCFC 52.2, we also respectfully request that the Court remand the claims of remaining plaintiffs to the Air Force Board for the Correction of Military Records (AFBCMR) to consider their claims that the Air Force illegally rescinded their retirement orders.

The Government has substantial and legitimate concerns regarding whether the administrative record is adequate for judicial review. The decision that precipitated the challenged rescission of plaintiffs' retirement orders does not directly address the Air Force Instruction that plaintiffs allege was violated. Accordingly, the AFBCMR should have the opportunity to address whether the rescissions were errors or injustices and to explain why. If the AFBCMR reinstates the rescinded retirement orders, then it may obviate the need for further proceedings in this Court. If the AFBCMR does not reinstate the rescinded retirement orders, then its explanation of why the Air Force's rescission of plaintiffs' retirement orders was permissible should assist the Court in evaluating plaintiffs' claims.

The Government has conferred in good faith with plaintiffs' counsel, who has indicated that plaintiffs oppose our motion to remand. Plaintiffs' counsel also indicated (at 4:24 pm ET this afternoon) that plaintiffs intend to voluntarily dismiss the claims of Lt Col Davis, TSgt Walley, and TSgt Hunt after TSgt Hunt begins receiving retirement pay, which plaintiffs

---

[1] Additional plaintiffs may be retired pursuant to TERA before the Court decides this motion. If that occurs, we will notify the Court, and we anticipate requesting that those plaintiffs be dismissed for the same reasons articulated in this motion.

anticipate will be around September 1, 2026. Should plaintiffs follow through with that plan, that would moot our motion to dismiss those plaintiffs.[2]

## STATEMENT OF THE ISSUES

1. Whether the claims of Lt Col Davis, TSgt Walley, and TSgt Hunt challenging the rescission of their initial retirement orders should be dismissed as moot or for failure to state a claim because the Air Force has since issued them new retirement orders with additional active-duty service credit for the period between the effective dates of their rescinded retirement orders and the effective dates of their new retirement orders.

2. Whether the Court should remand the remaining plaintiffs' claims to the AFBCMR.

## STATEMENT OF THE CASE[3]

On January 27, 2025, President Trump issued Executive Order 14183, Prioritizing Military Excellence and Readiness, 90 Fed. Reg. 8757 (Jan. 27, 2025). The President determined that "the medical, surgical, and mental health constraints on individuals with gender dysphoria" are inconsistent with "the policy of the United States Government to establish high standards for troop readiness, lethality, cohesion, honesty, humility, uniformity, and integrity." *Id.* at 8757. On February 7, 2025, the Secretary of Defense issued a memorandum authorizing the Under Secretary of Defense for Personnel and Readiness (USD (P&R)) to issue additional

---

[2] Pursuant to RCFC Appendix K ¶ 3, we respectfully request that, if the Court denies our motion to remand, it afford the parties 14 days after that order to file their joint motion for a scheduling order. We will respond separately to plaintiffs' unilateral "motion for entry of a scheduling order," of which we had no notice until it was filed.

[3] For purposes of this motion only, we accept as true the factual allegations set forth in the complaint. We respectfully reserve the right to challenge the factual allegations in the complaint in further proceedings.

policy and implementation guidance regarding service by members of the military with a current diagnosis or history of gender dysphoria. *See* Secretary of Defense, Prioritizing Military Excellence and Readiness (Feb. 7, 2025) (ECF No. 16-1 at 3). On February 26, 2025, the Office of Under Secretary of Defense for Personnel and Readiness (OUSD (P&R)) issued the guidance. OUSD (P&R), Additional Guidance on Prioritizing Military Excellence and Readiness (Feb. 26, 2025) (Selnick Memo) (ECF No. 16-1 at 4-16).

The OUSD (P&R) guidance provided that "[s]ervice members who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria are disqualified from military service." Selnick Memo Att. ¶ 4.3(a) (ECF. No. 16-1 at 11). The guidance also provided that "[s]ervice members who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria and are not granted a waiver pursuant to section 4.3. of this attachment will be processed for administrative separation." *Id.* at ¶ 4.4(a) (ECF No. 16-1 at 11).

Rather than undergoing involuntary separation proceedings, service members with gender dysphoria or a history of gender dysphoria were permitted to separate voluntarily within a certain timeframe, with voluntary separation pay in an amount that was twice the rate of the involuntary separation pay for which the member would have been eligible. *Id.* at ¶ 4.4(a)(4) (ECF No. 16-1 at 12). Additionally, the OUSD (P&R) guidance provided that such service members "with over 18 but less than 20 years of total active duty service are eligible for early retirement under the Temporary Early Retirement Authority in accordance with [Department of Defense Instruction (DoDI)] 1332.46." *Id.* at ¶ 4.4(a)(8) (ECF No. 16-1 at 12).

On May 23, 2025, the Acting Assistant Secretary of the Air Force for Manpower and Reserve Affairs, Gwendolyn DeFilippi, issued a memorandum entitled "Additional [Air Force]

Implementing Policy on Prioritizing Military Excellence and Readiness" (DeFilippi Memo). ECF No. 1-2. This Air Force guidance provided that "Service members may apply for voluntary retirement or, if eligible, Temporary Early Retirement Authority (TERA). TERA is permitted in accordance with [the Selnick Memo] for Service members with over 18 but less than 20 years of service. Service members with 15 – 18 years of service may request TERA as an exception to policy." *Id.* at 3.

After the DeFilippi memo was issued, plaintiffs individually requested that they be granted a TERA retirement with at least 15 and less than 18 years of service. *See* ECF No. 1 at 8. In June 2025, each of the plaintiffs were issued retirement orders with retirement dates between September 1, 2025, and December 1, 2025. ECF No. 1 at 8-11; ECF Nos. 1-4 – 1-20.

On August 4, 2025, however, the new official performing the duties of the Assistant Secretary of the Air Force for Manpower and Reserve Affairs, Brian Scarlett, issued a memorandum stating that he was disapproving the TERA exception to policy requests for certain members with at least 15 years and less than 18 years of active service, including plaintiffs (Scarlett Memo). *See* ECF No. 1 at 12-17; ECF No. 1-22 at 2. The memorandum did not explain why Mr. Scarlett disapproved the TERA exception to policy requests. *See* ECF No. 1-22 at 2. A script for commanders issued with the Scarlett Memo provides some additional detail, stating that the Air Force "prematurely notified some [Air Force] members that their TERA applications under the gender dysphoria provision had been approved. Higher level review is required under the [Department of Defense (DoD)] gender dysphoria policy for members with 15-18 years of service. [The Air Force] has completed consideration of your request which has

now been disapproved by the senior official performing the duties of the Assistant Secretary of the Air Force for Manpower and Reserve Affairs." App. 1.[4]

Plaintiffs' retirement orders were rescinded on August 7, 2025, or September 9, 2025, before plaintiffs were released from active duty. *See* ECF No. 1 at 13-17; ECF No. 1-23 – 1-39. In 2025, 12 of the plaintiffs applied to the AFBCMR seeking to correct their records to reinstate their retirement orders. *See* App. 12. The AFBCMR closed the applications without action because there were open Inspector General investigations associated with the applications. *See id.* On November 10, 2025, plaintiffs filed their complaint in this case, alleging that the Air Force rescinded their retirement orders in violation of Department of the Air Force Instruction (DAFI) 36-3203 § 1.1.4 (July 8, 2025). *See* ECF No. 1.

In March 2026, we moved to dismiss the claims of 16 of the 17 plaintiffs for lack of jurisdiction because they were still on active duty at the time the complaint was filed, and, thus, were not seeking presently due retirement pay. *See* ECF No. 16. While our motion was pending, we notified the Court that Lt Col Davis and TSgt Walley were retired pursuant to TERA effective April 1, 2026, and July 1, 2026, respectively. *See* ECF Nos. 19, 20. TSgt Hunt was retired pursuant to TERA effective August 1, 2026. *See* App. 7, 10. Lt Col Davis's new retirement orders reflect six more months of active service than Lt Col Davis's rescinded retirement orders (which would have been effective October 1, 2025). *See* ECF No. 19-1; ECF No. 1-5 at 2. TSgt Walley's new retirement orders reflect nine more months of active service than TSgt Walley's rescinded retirement orders (which also would have been effective October 1, 2025). *See* ECF No. 20-1; ECF No. 1-17 at 2. And TSgt Hunt's new retirement orders reflect

---

[4] "App. __" refers to the appendix attached to this motion.

10 more months of active service than TSgt Hunt's rescinded retirement orders (which also would have been effective October 1, 2025). *See* App. 7; ECF No. 1-12 at 2.

On July 22, 2026, the Court denied our partial motion to dismiss, concluding that plaintiffs have asserted a claim for presently due retirement pay from the effective dates of their rescinded retirement orders and that the issue of whether plaintiffs can recover retroactive retirement pay for periods that they were on active duty is a merits issue. *See* ECF No. 21 at 7-9. The Court permitted plaintiffs to file a supplemental complaint under RCFC 15(d) to cure the jurisdictional defect that the claims of 11 plaintiffs had not yet accrued at the time of the November 10, 2025 complaint because the effective date of their rescinded retirement orders was December 1, 2025. *See id.* at 9-10. Plaintiffs filed their supplemental complaint on August 4, 2026. ECF No. 24.

## ARGUMENT

### I. Standards of Review

#### A. Standard For A RCFC 12(b)(1) Motion To Dismiss

Plaintiffs bear the burden of establishing subject-matter jurisdiction. *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998). In addressing a RCFC 12(b)(1) motion, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997). However, in deciding a motion to dismiss for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1), the Court may consider evidentiary matters outside the pleadings. *Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 884 (Fed. Cir. 1985).

### B. <u>Standard For A RCFC 12(b)(6) Motion To Dismiss</u>

A motion to dismiss for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the plaintiffs do not entitle them to a remedy under the law. *Perez v. United States*, 156 F.3d 1366, 1370 (Fed. Cir. 1998). In considering such a motion, the Court assumes all well-pled factual allegations as true and makes all reasonable inferences in favor of the non-movant. *See id.* The Court is not, however, required to accept as true conclusory allegations that the elements of a cause of action are met. *See Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009). Also, although the Court "primarily consider[s] the allegations in the complaint, [it] may also look to 'matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record.'" *A&D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1147 (Fed. Cir. 2014) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citation omitted).

### C. <u>Standard For A Voluntary Remand</u>

RCFC 52.2(a) provides in relevant part that "[i]n any case within its jurisdiction, the court, on motion or on its own, may order the remand of appropriate matters to an administrative or executive body or official." An agency may request a remand because of "intervening events outside of [its] control, for example, a new legal decision or the passage of new legislation[,]" or

simply to "reconsider its previous position" without admitting error. *SKF USA Inc. v. United States*, 254 F.3d 1022, 1028-29 (Fed. Cir. 2001).

Although an agency's voluntary request for a remand to reconsider its previous position without admitting error "may be refused if [it] is frivolous or in bad faith," a remand is usually appropriate if an agency's concerns are "substantial and legitimate[.]" *Id.* at 1029. A plaintiff's consent is not necessary for a remand on this basis. *See, e.g.*, *Rahman v. United States*, 149 Fed. Cl. 685 (2020); *Wolfing v. United States*, 144 Fed. Cl. 516, 521-22 (2019).

## II. <u>The Claims of Lt Col Davis, TSgt Walley, And TSgt Hunt Are Moot</u>

### A. <u>Standard For Mootness</u>

"[M]ootness . . . is a threshold jurisdictional issue." *Myers Investigative and Sec'y Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (2002). A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) (citation omitted). "The inability of the federal judiciary 'to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.'" *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (citation omitted).

Accordingly, an actual case or controversy must exist at all stages of review, not simply when the action was filed. *DeFunis*, 416 U.S. at 319. The three requirements for a case or controversy are: 1) an "injury in fact"; 2) "a causal connection between the injury and the conduct complained of"; and 3) a likelihood that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998) (stating that the

"triad of injury in fact, causation, and redressability . . . constitutes the core of Article III's case-or-controversy requirement") (footnote omitted).[5]

### B. Lt Col Davis, TSgt Walley, And TSgt Hunt Are Not Presently Suffering From An Injury In Fact That Can Be Redressed By This Court Because They Have Been Retired With Higher Gross Monthly Retirement Pay Due To Their Additional Active Service Between The Effective Dates Of Their Rescinded Retirement Orders And Their New Retirement Orders

Lt Col Davis, TSgt Walley, And TSgt Hunt are not presently suffering from an injury in fact that can be redressed by this Court. In their complaint, plaintiffs allege that the Air Force illegally rescinded their retirement orders, and, thus, they "are being deprived of the retirement pay to which they are entitled." ECF No. 1 at 18. Plaintiffs seek monetary relief as well as an order that their "rescinded retirement orders be reinstated and that their military records be corrected accordingly, with the retirement effective dates and durations of service adjusted to account for any days that Plaintiffs continue to serve after the retirement effective dates specified in the rescinded orders[.]" *Id.* at 18-19.

The Air Force has effectively granted the injunctive relief that Lt Col Davis, TSgt Walley, and TSgt Hunt seek. Although the Air Force has not "reinstated" their rescinded retirement orders, the Air Force issued them new retirement orders "with the retirement effective dates and durations of service adjusted to account for any days that [they] continue[d] to serve after the retirement effective dates specified in the rescinded orders[.]" *Id.* Lt Col Davis's new retirement orders reflect six more months of active service than Lt Col Davis's rescinded retirement orders. *See* ECF No. 19-1; ECF No. 1-5 at 2. TSgt Walley's new retirement orders reflect nine more months of active service than TSgt Walley's rescinded retirement orders. *See*

[5] Although this is an Article I Court, a plaintiff must still meet the minimum Article III case-and-controversy requirements. *See, e.g.*, *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009); *MVM, Inc. v. United States*, 177 Fed. Cl. 201, 206 (2025).

ECF No. 20-1; ECF No. 1-17 at 2. And TSgt Hunt's new retirement orders reflect 10 more months of active service than TSgt Hunt's rescinded retirement orders. *See* App. 7; ECF No. 1-12 at 2.

Due to their additional active service, the gross monthly retirement pay for these plaintiffs' is *higher* than it would have been if they had been retired pursuant to their rescinded retirement orders. Under TERA, their gross monthly retirement pay is calculated by multiplying their retired pay base, which is the average of their highest 36-months of basic pay (10 U.S.C. §§ 1407(c)(1)), by their retired pay multiplier, which is 2.5 percent times their years of creditable service (10 U.S.C. § 1409(b)(1)(A)-(B)), and then reducing the amount "by 1/12th of 1 percent for each full month by which the number of months of active service of the member are less than 240," National Defense Authorization Act for Fiscal Year 1993, Pub. L. 102-484, § 4403(e), 106 Stat. 2315, 2703 (1992) (1993 NDAA). Accordingly, their gross monthly retirement pay is higher than it would have been under their rescinded retirement orders because: 1) their retired pay multiplier increased due to their additional active service, *see* 10 U.S.C. § 1405(a)(1), (b)(1); 2) their TERA reduction decreased due to their additional active service, *see* 1993 NDAA § 4403(e), 106 Stat. at 2703; and 3) their retired pay base (highest 36 months of basic pay) increased because they earned more basic pay in 2025-2026 than in 2022-2023 due to basic pay cost-of-living increases, more years of service, and, for Lt Col Davis, an April 2024 promotion from Major to Lieutenant Colonel, *see* ECF No. 19-2 at 1, and basic pay tables[6].

[6] Plaintiffs' basic pay rates for 2022-2026 are located in Exec. Order No. 14368, Adjustments of Certain Rates of Pay, 90 Fed. Reg. 60521 (2025), Exec. Order No. 14132, Adjustments of Certain Rates of Pay, 89 Fed. Reg. 106963 (2024), Exec. Order No. 14113, Adjustments of Certain Rates of Pay 88 Fed. Reg. 89259 (2023), Exec. Order No. 14090, Adjustments of Certain Rates of Pay, 87 Fed. Reg. 79985 (2022), Exec. Order No. 14061, Adjustments of Certain Rates of Pay, 86 Fed. Reg. 73601 (2021).

To the extent that Lt Col Davis, TSgt Walley, and TSgt Hunt are also seeking retirement pay for the period between the effective date of their rescinded retirement orders and the effective dates of their new retirement orders, *see* ECF No. 21 at 8-9, that does not keep their claims live because the Court cannot grant them retirement pay for this period, even if their retirement orders were illegally rescinded.

These three plaintiffs remained on active duty for the entire period between the effective date of their rescinded retirement orders and the effective dates of their new retirement orders. *See* ECF No. 19-2, ECF No. 1-5 at 2 (Lt Col Davis); ECF No. 20-2, ECF No. 1-17 at 2 (TSgt Walley); App. 10, ECF No. 1-12 at 2 (TSgt Hunt). A service member may not collect both active duty pay and retirement pay for the same period. *See* 38 U.S.C. § 5304(c) ("Pension, compensation, or retirement pay on account of any person's own service shall not be paid to such person for any period for which such person receives active service pay."). And, if these plaintiffs had been retired pursuant to their rescinded retirement orders, their retirement pay would have been *significantly less than the active duty pay that they actually received* between the effective date of their rescinded retirement orders and the effective dates of their new retirement orders, because their retirement pay would have been calculated based on a *percentage* multiplier of their retired pay base, *i.e.*, the average of their highest 36-months of basic pay. *See* 10 U.S.C. §§ 1407(c)(1), 1409(b).

Accordingly, because Lt Col Davis, TSgt Walley, and TSgt Hunt have already effectively received the retirement orders that they sought in their complaint, and the Court cannot, as a matter of law, grant them any retirement pay for the periods before or after the effective dates of their new retirement orders, their claims are moot and should be dismissed for lack of jurisdiction. Alternatively, if the Court concludes that there is a live dispute regarding these

plaintiffs' entitlement to retirement pay but agrees with us that they are not entitled to any retirement pay, then their claims should be dismissed for failure to state a claim. Either way, the claims of Lt Col Davis, TSgt Walley, and TSgt Hunt should be dismissed.

### C. This Case Does Not Involve The Voluntary Cessation Of A Challenged Practice And, Even If Did, The New Retirement Orders Of Lt Col Davis, TSgt Walley, And TSgt Hunt Have Completely And Irrevocably Eradicated The Effects Of The Allegedly Illegal Rescission Of Their Previous Retirement Orders, And There Is No Reasonable Expectation That Their New Retirement Orders Will Be Rescinded Pursuant To Department Of War (DoW) Gender Dysphoria Policy

The United States Supreme Court has recognized an exception to the general rule of mootness "when the defendant voluntarily ceases the challenged practice," but this "exception may be refuted when there clearly is no 'reasonable expectation' that the alleged violation will recur and 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Chapman Law Firm Co. v. Greenleaf Constr. Co.*, 490 F.3d 934, 939-40 (Fed. Cir. 2007) (quoting *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). This exception does not overcome the mootness of the claims of Lt Col Davis, TSgt Walley, and TSgt Hunt for two reasons.

First, the Air Force has not voluntarily ceased the challenged practice, so the voluntary cessation exception is inapplicable. The Air Force did not reinstate any plaintiffs' rescinded retirement orders with less than 18 years of active service; rather, the Air Force issued Lt Col Davis, TSgt Walley, and TSgt Hunt new retirement orders under TERA because they requested to be retired with *more than 18 years of active service*. *See* ECF Nos. 19-1, 20-1; App. 7. Accordingly, the heightened standard under the voluntary cessation exception is inapplicable. *See DeFunis*, 416 U.S. at 318 ("mootness in the present case depends not at all upon a 'voluntary cessation' of the admissions practices that were the subject of this litigation.

It depends, instead, upon the simple fact that [the plaintiff] is now in the final quarter of the final year of his course of study, and the settled and unchallenged policy of the Law School to permit him to complete the term for which he is now enrolled.”).

Second, even if the heightened standard for refuting the voluntary cessation exception were applicable, it is met here. The issuance of new retirement orders to Lt Col Davis, TSgt Walley, and TSgt Hunt, with additional active service credit for the periods between the effective dates of their rescinded retirement orders and their new retirement orders, has completely and irrevocably eradicated the effects of the rescission of their earlier retirement orders because, as demonstrated in Section II.B, above, their gross monthly retirement pay under their new retirement orders is higher than it would have been under their rescinded retirement orders, and the plaintiffs earned higher active-duty pay during the period when they remained on active duty than the retirement pay that they would have received under their rescinded retirement orders.

Moreover, there is no reasonable expectation that the Air Force will rescind these three plaintiffs’ new retirement orders based on a decision to deny an exception to DoW’s early retirement policy in the Selnick Memo because these plaintiffs now have more than 18 years of active-service credit and, thus, they were retired *pursuant to DoW policy*. *See* Selnick Memo Att. ¶ 4.4(a)(8) (ECF. No. 16-1 at 12).

Accordingly, the voluntary cessation exception does not keep the claims of Lt Col Davis, TSgt Walley, and TSgt Hunt live.

## III. <u>The Court Should Remand The Remaining Plaintiffs' Claims To The AFBCMR</u>

The Court should remand the claims of the remaining plaintiffs to the AFBCMR. This motion for a voluntary remand is predicated on the interests of justice and is not predicated upon an admission of error by the United States or the Air Force.

The United States Court of Appeals for the Federal Circuit has recognized that, although there is no general requirement to exhaust administrative remedies before a corrections board, "[t]ypically, if suit is filed just in the [Claims Court], that court will require resort to a Corrections Board while the matter remains pending in that court." *Antonellis v. United States*, 723 F.3d 1328, 1333 (Fed. Cir. 2013) (citation omitted). This is a case where such a remand is appropriate, as the Government has substantial and legitimate concerns about the adequacy of the administrative record for review.[7]

Plaintiffs allege that the Air Force rescinded their retirement orders in violation of DAFI 36-3203 § 1.1.4, which provides that:

> The appropriate agency may only revoke, rescind, or amend the order if fraud, manifest error, mathematical error, mistake of law, or substantial new evidence renders the order invalid. The appropriate agency may amend or rescind retirement orders when, in rare circumstances such as medical hold, civil confinement, or prohibiting conditions listed in **Table 3.1** or restrictions listed in **Table 3.2**, a member cannot complete retirement processing before the effective retirement date.

---

[7] In August and September 2025, most of the plaintiffs submitted applications to the AFBCMR seeking reinstatement of their rescinded retirement orders. App. 12. Although the AFBCMR exercised its discretion to return those applications without action due to open Inspector General investigations, *see id.*, 32 C.F.R. § 865.3(c)(3), the AFBCMR has confirmed that it would consider applications from plaintiffs submitted pursuant to a remand order of this Court and would not return them without action based on any open Inspector General investigations, *see* App. 12.

ECF No. 1-21 at 9. The memorandum that precipitated the rescission of plaintiffs' retirement orders does not specifically address DAFI 36-3203 § 1.1.4. *See* ECF No. 1-22 at 2. Rather, Mr. Scarlett simply stated: "After careful consideration of the individual applications, I am disapproving all Temporary Early Retirement Authority (TERA) exception to policy requests in Tabs l and 2 for members with 15-18 years of service. The decisions were made following the guidance set forth in" the Selnick Memo and the DeFilippi Memo.

A commander's script issued in conjunction with the Scarlett Memo provides some additional explanation, stating that the Air Force "prematurely notified some [Air Force] members that their TERA applications under the gender dysphoria provision had been approved. Higher level review is required under the DoD gender dysphoria policy for members with 15-18 years of service. [The Air Force] has completed consideration of your request which has now been disapproved by the senior official performing the duties of the Assistant Secretary of the Air Force for Manpower and Reserve Affairs." App. 1. But this script also does not specifically address DAFI 36-3203 § 1.1.4, and it does not specifically identify what "[h]igher level review" was required under DoD's gender dysphoria policy. *See* App. 1-6.

When "the record is inadequate, . . . 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)). For example, in *Yang v. United States*, the Court granted the Government's motion to remand a disability retirement claim to the Board for Correction of Naval Records over the plaintiff's objection because the previous administrative decisions by the Physical Evaluation Board and Navy Council of Review Boards did not "explicitly take account of" two of the regulatory criteria that they were required to use to make fitness determinations, and, thus, "there

[was] virtually no agency record for the court to review [on these factors][.]" 149 Fed. Cl. 277, 280 (2020).

Accordingly, the Court should remand to the AFBCMR to consider plaintiffs' allegations that the Air Force violated DAFI 36-3203 § 1.1.4 and to specifically explain why the rescission of plaintiffs' retirement orders was or was not permissible under DAFI 36-3203 § 1.1.4. If the AFBCMR grants plaintiffs' relief reinstating their retirement orders, that may obviate the need for further proceedings in this Court. If the AFBCMR denies plaintiffs relief, then the AFBCMR's explanation of why the rescission of plaintiffs' retirement orders was permissible under DAFI 36-3203 § 1.1.4 should assist the Court in evaluating plaintiffs' claims.

## **CONCLUSION**

For these reasons, we respectfully request that the Court:

1. dismiss the claims of Lt Col Davis, TSgt Walley, and TSgt Hunt for lack of jurisdiction or failure to state a claim;
2. remand the claims of the remaining plaintiffs to the Secretary of the Air Force with instructions to submit the matter to the AFBCMR;
3. order the remaining plaintiffs to each submit a completed DD Form 149, *Application for Correction of Military Record*, to the AFBCMR within 30 days of the Court's remand order;
4. instruct the AFBCMR to, upon receipt of plaintiffs' applications:
    a. consider plaintiffs' allegations that the Air Force violated DAFI 36-3203 § 1.1.4 and specifically explain why the rescission of plaintiffs' retirement orders was or was not permissible under DAFI 36-3203 § 1.1.4;

b. address in its decision any other issues plaintiffs raise in their applications and consider any evidence or arguments in plaintiffs' applications; and

c. determine and explain whether plaintiffs are entitled to any relief, including correction of records and retirement under TERA, based upon any errors or injustices found;

5. establish the initial duration of the remand for 180 days, which may be extended upon request if necessary;

6. stay further proceedings in this action pending the completion of the remand; and

7. order the Government to notify the Court within 14 days of a decision by the Air Force on remand.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. MCCARTHY
Director

DOUGLAS K. MICKLE
Acting Deputy Director

s/ William P. Rayel
WILLIAM P. RAYEL
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
United States Department of Justice
PO Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 616-0302
Fax: (202) 307-0972
E-mail: William.Rayel@usdoj.gov

Attorneys for Defendant

OF COUNSEL:

MICHELLE M. LAURENCE, Major, USAF
Chief
Military Personnel Law and Litigation Branch
The Judge Advocate General's Corps
1500 West Perimeter Rd., Suite 1370
Joint Base Andrews-Naval Air Facility, MD 20762

Dated: August 11, 2026